PETER NORDLUND and Others v. FRANK E. DAHLGREN.[1]

July 23, 1915.

Nos. 19,293—(204).

**Homestead — right of surviving spouse.**

1. The rights of the surviving spouse in the homestead vest and become absolute at the death of the deceased spouse. The statutory provisions for setting it apart to him merely prescribe the procedure for segregating it from the remainder of the estate, and the administrator does not become entitled to possession of the homestead although it has not been so set apart. The homestead of Carrie Walberg, at her death, descended to her husband for the term of his natural life, and his possession thereof was as such tenant for life and not as administrator.

**Same — taxes and cost of improvements.**

2. Where the surviving spouse is tenant for life of the homestead of the deceased spouse and also administrator of her estate, he cannot charge the estate with taxes paid by him upon the homestead nor with the value of improvements placed by him thereon.

[1] Reported in 153 N. W. 876.

**Same — remainder in fee.**

3. The fee of the homestead vested in the children subject only to the life estate of the surviving husband, and the title of the children to such remainder in fee cannot be waived, impaired or burdened by the surviving husband either as life tenant or as administrator.

**Executor and administrator — final account — payment of unallowed claims.**

4. Under chapter 265, Laws of 1899, claims theretofore paid by the administrator without having been allowed by the probate court, may be credited to him in his final account upon proof that such claims were just and existing demands against the estate at the time of payment.

**Estate of decedent — selection of personal property.**

5. The right of the surviving spouse to select personal property to the value of $500, if not exercised in his lifetime, may be exercised by his administrator.

**Executor and administrator — final account — rents and profits.**

6. Where the administrator takes possession of the real estate he must account for the rents and profits received therefrom, and if the amount received cannot be otherwise determined, the court may charge him with the rental value of the land.

Peter Nordlund, as administrator *de bonis non* of the estate of Carrie Walberg, deceased, and the heirs at law of decedent filed objections to the allowance of the final account of Frank E. Dahlgren as representative of the estate of John O. Walberg, deceased, administrator of the estate of Carrie Walberg, deceased. The final account was allowed and the objectors appealed to the district court for Marshall county from the order of the probate court allowing the account. The appeal was heard before Watts, J., who made amended findings and ordered judgment adjusting the accounting and ordered judgment against said Dahlgren for the sum of $3,088.29. From the order denying their motion for amended findings or for a new trial, the objectors in the probate court appealed. Reversed.

*E. O. Hagen* and *A. N. Eckstrom,* for appellants.

*Martin O'Brien, Julius J. Olson* and *Rasmus Hage,* for respondent.

TAYLOR, C.

Carrie Walberg died intestate May 8, 1892, possessed of 600 acres of land and a quantity of personal property, and left her surviving, her husband, John O. Walberg, and six small children. At the time of her death and for several years prior thereto, the family resided upon an 80-acre tract of the land owned by her and known as the "home 80;" and after her death her husband continued to reside thereon until his own death in 1910. On June 29, 1892, John O. Walberg was appointed and duly qualified as administrator of his wife's estate; and an order was made by the probate court limiting the time for filing claims and allowing the administrator 18 months in which to settle the estate. On November 29, 1892, Walberg filed an inventory and an appraisement was duly made. On December 31, 1892, claims were allowed aggregating the sum of $133.32. On January 6, 1893, pursuant to his application therefor, license was granted to Walberg to sell the personal property other than the household goods. In December, 1893, the time in which to settle the estate was extended for a period of 12 months, and in December, 1894, it was again extended for an additional 12 months. No further action was taken by the probate court until after Walberg's death, and he never filed any account, nor made any report of his doings as administrator. On January 6, 1893, Walberg by deed conveyed to the children his interest in all the lands of which Carrie Walberg died seized except the home 80. Notwithstanding this conveyance, he occupied and used all the lands, as if he were the absolute owner thereof, from the death of Carrie Walberg until his own death, a period of nearly 18 years. Much of this land was state school land which had been purchased from the state under contracts giving her a long term of years in which to pay therefor. Walberg made improvements upon the land, paid the taxes thereon, and made the payments to the state required by the contracts. About 18 months after the death of Carrie Walberg, John O. Walberg remarried and with his second wife resided upon the "home 80" until his death on February 4, 1910. There are several children, issue of the second marriage, and Walberg left a will giving all his property to his widow. After his death, the probate court appointed Frank E.

Dahlgren as representative of his estate, and Peter Nordlund as administrator *de bonis non* of the estate of Carrie Walberg. Dahlgren as such representative prepared and filed the final account of John O. Walberg as administrator of the estate of Carrie Walberg. Nordlund as administrator *de bonis non* of the estate of Carrie Walberg, and the children of Carrie Walberg, filed objections thereto. The probate court modified the account in some particulars and allowed it as modified. The administrator *de bonis non* and the children of Carrie Walberg appealed to the district court. That court modified the account, as allowed by the probate court, in several particulars, and approved and allowed it as so modified. A further appeal brings the matter before this court.

The buildings upon the homestead during the lifetime of Carrie Walberg were small log structures of little value. At various times after her death, Walberg erected large and substantial buildings. In the final account, the court credited Walberg with the value of the improvements made upon the real estate and with the amount of taxes paid thereon; and included in the amount allowed for improvements the value of the improvements made upon the homestead, and in the amount allowed for taxes, the taxes paid upon the homestead.

Appellants contend that the court erred in allowing Walberg for taxes paid and improvements made upon the homestead; that as tenant for life it was his duty to pay the taxes himself; and that if he chose to make improvements thereon he could not burden either the remaindermen or the estate with the expense thereof.

It is well settled that a tenant for life of real estate must pay the taxes thereon; and that as a general rule he cannot recover for improvements made while holding such life estate. Smalley v. Isaacson, 40 Minn. 450, 42 N. W. 352; Wilson v. Proctor, 28 Minn. 13, 8 N. W. 830; St. Paul Trust Co. v. Mintzer, 65 Minn. 124, 67 N. W. 657, 32 L.R.A. 756, 60 Am. St. 444; Porter v. Osmun, 3 Ann. Cas. 687, and cases cited in note appended thereto [135 Mich. 361, 97 N. W. 756]; Missouri Central Bldg. & Loan Assn. v. Eveler, Ann. Cas. 1913A, 486, and cases cited in note at page 489 [237 Mo. 679, 141 S. W. 877]; Frederick v. Frederick's Admr. 13 L.R.A. (N.S.) 514, and cases cited in note appended thereto [31 Ky. L. R.

583, 102 S. W. 858]. Respondent does not seriously question this rule, but contends that Walberg occupied the homestead as administrator and not as tenant for life. He contends that the estate in the homestead given the surviving spouse by the statute does not vest in such surviving spouse until he has made an application to the probate court to have such homestead set apart to him and the court has made an order setting it apart; and that, as Walberg never made any such application and the court never made any such order, Walberg never possessed a life estate in the homestead. He further contends that the statute authorizing the administrator to take possession of the real estate and to receive the rents and profits thereof until the estate is settled, gives him the right to the possession of the homestead until it has been set apart to the surviving spouse by the probate court. None of these propositions can be sustained. The statute in force at the death of Carrie Walberg (G. S. 1894, § 4470) provided:

"The homestead of the deceased, as such homestead is or may be defined by the statute relating to homestead exemptions, shall descend, free from any testamentary devise or other disposition to which the surviving husband or wife shall not have assented in writing, and free from all debts or claims upon the estate of the deceased as follows: 1. * * * 2. If there be a child or the issue of any deceased child living and a surviving husband or wife, to such husband or wife during the term of his or her natural life, remainder to the child or children and the issue of any deceased child by right of representation."

At the death of Carrie Walberg, a life estate in the homestead vested in her husband by virtue of this statute without any act on his part or on the part of the probate court. Wilson v. Proctor, 28 Minn. 13, 8 N. W. 830; Holbrook v. Wightman, 31 Minn. 168, 17 N. W. 280; McCarthy v. Van Der Mey, 42 Minn. 189, 44 N. W. 53.

Respondent bases his contention that Walberg occupied the land as administrator upon sections 4493–4496, G. S. 1894. So far as these sections relate to the homestead, we think they merely provide a procedure for segregating the homestead from the other property of the

estate. See Sammons v. Higbie's Estate, 103 Minn. 448, 115 N. W. 265, and Stromberg v. Stromberg, 119 Minn. 325, 138 N. W. 428. The homestead descends "free from all debts or claims upon the estate." Neither the land nor the rents or profits derived from the land can be used for the purpose of satisfying claims against the estate. For administration purposes, it is not a part of the estate. It descends to the surviving spouse for the term of his natural life, and he, not the administrator, is entitled to the possession of it and to the rents and profits derived from it. Eckstein v. Radl, 72 Minn. 95, 75 N. W. 112. But respondent argues in effect that Walberg, by failing to have the homestead set apart to him, waived his right to a life estate therein. On the death of Carrie Walberg, the title in fee to her homestead vested in her children, subject only to the life estate of her surviving husband, and no waiver or other act of his could impair the rights secured to the children by the statute. He could make such disposition of his life term as he saw fit, but he could not convert the homestead into assets of the estate, nor subject the fee which had vested in the children to any burdens whatever. Mintzer v. St. Paul Trust Co. 45 Minn. 323, at the bottom of page 326, 47 N. W. 973. It follows that the court erred in crediting Walberg's account with the amount of taxes paid upon the homestead and with the value of the betterments placed thereon. Of course he was entitled to the rents and profits received from the homestead and cannot be charged therewith.

As there must be a new trial for the error above mentioned, we shall make only a brief reference to a few of the other questions which have been raised.

The court credited Walberg's account with certain amounts claimed to have been paid by him to creditors of Carrie Walberg upon claims which had not been presented to, or allowed by, the probate court. Chapter 265, p. 308, Laws of 1899, authorized the court to allow such items upon satisfactory proof that the "claims were just and existing demands against said estate at the time of payment." Although this statute was repealed by the revised laws of 1905, such repeal did not affect payments ratified and validated by the statute (section 5505, R. L. 1905), and the court had authority to make the

allowance in question. In view of a new trial, we refrain from discussing the evidence tending to establish such claims, and the payment thereof, further than to say that the trial court does not appear to have exceeded its judicial discretion in receiving in evidence the several vouchers offered by respondent.

The statute gave Walberg, as surviving husband, personal property of his wife to the value of $500 to be selected by him. He made no such selection in his lifetime. His administrator asked to have this amount credited upon his final account and the court allowed the claim. As Mrs. Walberg left sufficient personal property to satisfy this claim, the ruling was correct. Sammons v. Higbie's Estate, 103 Minn. 448, 115 N. W. 265; Stromberg v. Stromberg, 119 Minn. 325, 138 N. W. 428.

It is not questioned that Walberg had possession of the land, other than the homestead, as administrator, and he was therefore properly chargeable with the rents and profits received therefrom, subject to an equitable deduction for the betterments placed thereon. He appears to have kept no records or accounts, however, and, for the lack of any other means of determining the profits received from the land, the court took the rental value thereof as the basis for determining the amount to be charged against him. In the absence of evidence to show the actual profits, the method adopted by the court was proper. But the court proceeded upon the erroneous theory that the homestead was a part of the property which Walberg was handling as administrator, and both the amount charged against him for the use of the land, and the amount allowed him as compensation for his services, were probably affected by this error.

As both the amount to be charged against him for use of the land, and the amount to be credited to him as compensation for his services, will be determined anew from the evidence submitted at the second trial, and the value of the use of the homestead will be excluded from one amount, and the value of Walberg's services in managing and operating it from the other, it is not necessary to determine whether the account as it now stands allows him an excessive amount for such services as contended by appellants.

Order reversed.