RICHARD W. KOHRT AND ANOTHER v. H. V. MERCER AND ANOTHER.[1]

November 4, 1938.

No. 31,761.

[1]Reported in 282 N. W. 129.

*H. V. Mercer, C. G. Anderson,* and *H. A. Frankson,* for appellants.
*Thomas H. Strizich,* for respondents.

JULIUS J. OLSON, JUSTICE.

Defendants appeal from an order denying their alternative motion for amended and supplementary findings or for new trial.

This was an action to quiet title to certain real property in Hibbing. The complaint is in the usual form in such cases. Defendants (who are attorneys at law) asserted certain lien claims against the property under the provisions of 1 Mason Minn. St. 1927, § 5695. The reply put in issue their existence and validity as against plaintiffs.

The facts may be summarized thus: The involved property is located in the village of Hibbing and was acquired in 1912 by Her-

man A. and Frederick Kohrt, brothers, as tenants in common. Herman died intestate January 24, 1917, survived by his wife, Ida, and the plaintiff Frances Davis, an adopted daughter. Such proceedings were thereafter had in and by the probate court as to vest a life estate in the widow, and the remainder in the daughter, the property as to Herman being his statutory homestead. Frances was born June 7, 1907.

In November, 1926, Frederick Kohrt and wife by warranty deed conveyed their interest in the property to plaintiff Richard W. Kohrt, a younger brother of the original grantees. The consideration for that conveyance was stated in the deed to be $12,000 but which the court found to be $4,000; the court also finding that Richard acquired title in good faith and as an absolute conveyance, and that the consideration so paid was "in excess of the reasonable value" of grantors' interest in the property. On the same day Richard executed a mortgage thereon to Frederick's wife, Mary, in the amount of $10,000, although "Richard was not indebted to said Mary in any sum whatever." The mortgage was made and delivered—

"to said Mary in good faith and without intent to hinder, delay, or defraud the creditors of either said Frederick, Richard, or Mary, but only in order that, if in the future said undivided half of said lots should be sold by him at a sum in excess of the amount paid by him for the same, said Mary might receive said excess; that said Richard was able to sell said one-half interest in said lots on August 5, 1937, for said sum of $13,760 because many years after he bought the same and through long continued negotiations between citizens' committees and certain mining interests, a plan for the purchase of all private property located in North Hibbing was agreed upon whereby prices were obtained for each lot as part of the general plan so agreed upon far in excess of their fair market value as separate parcels. * * *

"That the plaintiffs herein never employed the defendants herein, or either of them, to perform any legal services or incur any expense on their account with respect to said lots 15 and 16, or otherwise.

"That the defendants herein have never had any right, title, or interest in or lien upon said lots 15 and 16 or either of them." And further that neither plaintiff signed the agreement upon which defendants' claim of lien is predicated, nor did they or either of them "authorize anyone to sign the same" in their behalf, "and did not know that said Fred [Frederick] Kohrt or Mrs. Ida Kohrt had signed said agreement until shortly before the commencement of this action."

Defendants' lien claim is founded upon a contract entered into January 2, 1923, by Ida Kohrt, surviving widow of Herman, and also by Frederick Kohrt, including many other property owners who had employed defendants in their professional capacity in respect to getting compensation from the mining companies for iron ore underlying the surface of the ground in that portion of the village.

Under the terms of that arrangement the attorneys were to receive for their services ten per cent of whatever money or moneys the owners might secure from any source out of any sale of their respective parcels of real estate, less any sums that might previously have been paid by such owners. The lien was not filed or recorded until August 14, 1935. Later two amended claims of liens were filed by one or both of defendants. Both Ida, surviving wife of Herman, and Frederick died prior to the time of trial of this action. Mary Kohrt, mortgagee named in the $10,000 mortgage given by Richard, is not a party to this cause; hence as to her rights and interests nothing may be determined here affecting the same.

■ Clearly the issues presented involve questions of fact only. The court having found the transactions complained of to be *bona fide,* for valuable consideration, and without intent to defraud anyone, our only concern is whether such finding is sustained. We shall not attempt to go into all the details shown by the record. Enough thereof should, however, be stated to establish that the findings are not only sustained but abundantly so. While it is true that the amount of money realized out of the involved properties when sold in 1937 was much more than was first thought possible, yet that does not in and of itself spell anything wrong or repre-

hensible on plaintiffs' part. As to Richard, the property had been held and owned by him nearly 11 years before the sale to the mining company was made; as to Mrs. Davis, her interest as remainderman had been in full force since her father's death, a period of more than 20 years before anything came to her in the way of money. It must be remembered that defendants' claims under their lien were not filed until some nine years after the deed to plaintiff Richard W. Kohrt was made, delivered, and recorded. His testimony is that his brother then owed him more than $2,000 for money furnished by him; that Frederick was being crowded by creditors and to satisfy these Richard borrowed $2,000 upon his own property to help Frederick. His hope that the property would at some time in the future pan out and his brother's necessities prompted the sale. There was nothing inherently wrong about it. At that time no bank or loaning agency would grant a loan anywhere approaching the consideration actually paid by him. The testimony is that one could not borrow as much as $50 upon the property in view of the precarious situation then existing. There simply was no sale for such property. Frederick discharged his obligations with the money so procured from Richard. No creditor of Frederick, other than defendants, has attacked the transfer, and their supposed claim remained quiescent until this case to quiet title was begun. The court found that there was fair consideration, want of fraudulent intent or purpose, and that the parties directly involved intended a complete and actual transfer of ownership. The mere fact that Richard because of his relationship wanted his brother's wife to get any surplus in event more money was realized out of the ultimate sale of the property does not in and of itself spell fraud on his part nor on the part of Frederick or his wife. As the situation then stood, no one other than Richard would think of paying anything like the sum of money risked by him. The court having found the facts as heretofore related and there being substantial evidence to sustain that finding, our concern ends.

A fair consideration is one which fairly represents the value of the property at the time such transfer is made. The final outcome in respect to what might be had for the property when and as

mining companies should go through with a purchase was a doubtful and uncertain future event that might or might not happen. (Compare Schlecht v. Schlecht, 168 Minn. 168, 172, 209 N. W. 883.) No one could or did foresee that there would be any profit to anyone. The record indicates nothing of a compelling kind that taints the transaction with fraud. Rather the evidence is strongly the other way. At any rate, it was for the trial judge, who had the opportunity of seeing and hearing the witnesses, to determine that issue. Richard testified positively that he knew nothing about any claim or lien as far as defendants were concerned. They were and have remained strangers. His purpose was first to protect his interest so as to come out whole, and, next, in event good fortune should bring more, that his brother's wife should be the beneficiary to the extent of such excess. She, not being a party to this cause, is necessarily not bound by anything that might be determined in this cause. The rule of law applicable is well stated in 3 Dunnell, Minn. Dig. (2 ed. & Supps.) § 3870 (the cases cited under notes sustain the text) as follows:

"A voluntary conveyance is one made without any valuable consideration. For 'valuable consideration' the Uniform Fraudulent Conveyance Act substitutes 'fair consideration' and defines it as follows: fair consideration is given for property, or obligation, (a) when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) when such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

The court was of opinion that Wetherill v. Canney, 62 Minn. 341, 64 N. W. 818; Hunt v. Ahnemann, 94 Minn. 67, 102 N. W. 376, and National Surety Co. v. Wittich, 184 Minn. 44, 237 N. W. 690, point the way. We agree.

■ As to Frances Davis, it likewise seems perfectly clear that the trial court's findings must be sustained. Her father died long before she reached maturity, in fact before any employment of attor-

neys was considered or accomplished by anyone here mentioned. She employed no one. The mother, who had a life estate only, could not incumber the rights of Frances. 2 Mason Minn. St. 1927, § 8719. The life estate having ended, there is nothing for defendants to reach as to her interest. To burden Frances with any liability is obviously out of question.

Here, as in Nordlund v. Dahlgren, 130 Minn. 462, 467, 153 N. W. 876, 878, Ann. Cas. 1917B, 941:

"The homestead descends 'free from all debts or claims upon the estate.' Neither the land nor the rents or profits derived from the land can be used for the purpose of satisfying claims against the estate. For administration purposes, it is not a part of the estate. It descends to the surviving spouse for the term of his natural life, and he, not the administrator, is entitled to the possession of it and to the rents and profits derived from it. Eckstein v. Radl, 72 Minn. 95, 75 N. W. 112. * * * On the death of Carrie Walberg, the title in fee to her homestead vested in her children, subject only to the life estate of her surviving husband, and no waiver or other act of his could impair the rights secured to the children by the statute. He could make such disposition of his life term as he saw fit, but he could not convert the homestead into assets of the estate, nor subject the fee which had vested in the children to any burdens whatever."

What has been said disposes of the case on the merits. We can see no need for further discussion.

The determination of the case by the trial court is right, and its order here for review is in all things affirmed.