Harriet MUSCALA, Appellant,

v.

Bernice WIRTJES, Personal Representative of the Estate of Edgar H. Karbo, deceased, Respondent.

No. 51333.

Supreme Court of Minnesota.

Oct. 9, 1981.

Kurzman, Shapiro & Manahan, Marc G. Kurzman and Mary Wertz, Minneapolis, for appellant.

David M. Watson, Tyler, for respondent.

WAHL, Justice.

This is an appeal by plaintiff Harriet Muscala from an April 9, 1980, order of the Lincoln County District Court directing that summary judgment be entered in favor of the defendant. The judgment denied the general claim of Harriet Muscala against the estate of the decedent for funeral expenses, holding that the estate comprised a homestead and was therefore exempt from this claim under Minn.Stat. §§ 510.01, 510.-07 (1980). We reverse.

The facts were stipulated by the parties. Harriet Muscala is the daughter of decedent's second wife, Selma Karbo. She claims $2,351.50 for burial expenses for her mother, Selma, who predeceased the decedent, Edgar Karbo, by 6 months. Harriet Muscala did not assert a claim during decedent's lifetime but maintains that she incurred the funeral expenses at Edgar Karbo's request. The defendant denies that this is so.

Edgar H. Karbo and his wife, Selma, moved out of their Arco, Minnesota home in early 1977. Edgar Karbo died on March 2, 1978, at the age of 84. The Arco property was sold for $10,000 by a representative of

the estate approximately 6 months after Edgar's death and more than a year after Edgar Karbo left the house. Informal probate of the estate was closed within a year. The proceeds were distributed to Karbo's children of majority age.

The circumstances relating to the Karbos' move from their Arco homestead are as follows. Edgar and Selma moved out of this home and entered the Trevilla Nursing Home in New Brighton, Minnesota. Selma died on September 10, 1977. Edgar then went to the home of his son in Russell, Minnesota until the funeral. After the funeral, Edgar spent 3 weeks at the Ivanhoe Hospital. From the hospital he was sent to Colonial Manor Nursing Home in Balaton, Minnesota. He lived there until his death in March of 1978, approximately 6 months later. During their absence from their home, neither of the Karbos filed notice with the county recorder claiming the Arco property as their homestead pursuant to § 510.07 (1980).

The parties stipulated to the following statement:

> The decedent repeatedly expressed a desire to return to and reside in his homestead in Arco, Minnesota. The homestead was unoccupied from the date of decedent's departure from his homestead to the date of his death. The intent of the decedent is undisputed; however, it is also undisputed that the decedent in the opinion of the family was physically unable to care for himself and reside at his homestead.

Harriet Muscala argues that the Arco house had been abandoned by the Karbos and was therefore not a homestead, the proceeds of the sale of which would be exempt from appellant's claim. The trial court found no abandonment.

Minn.Stat. § 510.01 (1980)[1] defines a homestead as the house "owned and occu-

---

1. Minn.Stat. § 510.01 (1980) reads:

The house owned and occupied by a debtor as his dwelling place, together with the land upon which it is situated to the amount hereinafter limited and defined, shall constitute the homestead of such debtor and his family, and

be exempt from seizure or sale under legal process on account of any debt not lawfully charged thereon in writing, except such as are incurred for work or materials furnished in the construction, repair, or improvement of such

pied by a debtor as his dwelling place," together with a limited amount of surrounding land. If property qualifies as a homestead, it is exempt from claims of some creditors. In addition, the proceeds from the sale of a homestead are exempt for a year. Minn.Stat. § 507.07 (1980).[2] The homestead exemption ceases when a person abandons his or her home. Section 510.07 is clear. If the owner of homestead property "shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the county recorder of the county in which it is situated a notice * * * claiming the same as his homestead." While abandonment of a homestead is ordinarily a question of actual cessation of occupancy plus intent, we have held, as recently as 1951, that the addition of the legislature of the 6-month vacancy rule means that the homestead exemption is lost after 6 months unless the person has filed, no matter what the person's intention. *First National Bank of Mankato v. Wilson*, 234 Minn. 160, 47 N.W.2d 764 (1951). The statute provides the method whereby homestead status may be retained regardless of the reason for the owner's nonoccupancy. A notice must be filed within 6 months.

In a limited class of cases, we have held and implied that the 6-month cut-off will not be strictly applied. *Millett v. Pearson*, 143 Minn. 187, 173 N.W. 411 (1919); *Clark v. Dewey*, 71 Minn. 108, 73 N.W. 639 (1898). In *Millett*, we held that a person in jail on a charge of murder was under a legal disability, and, since such a person was unable to change residence, a homestead exemption would not be lost despite the passing of 6 months. In *Clark*, Justice Mitchell made the following often-quoted observation about the need for a reasonable construction of the occupation requirement:

Actual occupancy, as distinguished from mere possession (which may be constructive), is the prominent idea associated with the word "homestead." Of course, the term "actual occupancy" must receive a reasonable construction, and is not to be understood as requiring constant personal presence, so as to make a man's residence his prison, or that a temporary absence, enforced by some casualty, or for purposes of business or pleasure would constitute a removal, ceasing to occupy, or an abandonment. *Quehl v. Peterson*, 47 Minn. 13, 49 N.W. 390. But even with this reasonable construction there must be actual and continued occupation of and residence upon the premises in order to constitute a homestead, except so far as occupancy is expressly dispensed with by the statute.

71 Minn. 110, 73 N.W. 639–40.

While we find that Edgar Karbo's case points up the need of the elderly for access to competent legal information and advice with regard to their rights, we do not find, on the facts before us, the legal disability or temporary absence which would justify an exception from the 6-month cut-off. Intent does not grant a continuing exemption from the statute. Edgar Karbo's homestead exemption ceased to exist when 6 months of nonoccupancy expired without the filing of a notice. Harriet Muscala should recover her claim. We need not reach the other issues raised by the appeal.

Reversed.

SCOTT, J., took no part in the consideration or decision of this case.

homestead, or for services performed by laborers or servants.

2. Minn.Stat. § 510.07 (1980) reads:

The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his hands. He may remove therefrom without affecting such exemption, if he do not thereby abandon the same as his place of abode. If he shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as his homestead. In no case shall the exemption continue more than five years after such filing, unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or his family.