Esther D. EUSTICE, as trustee For the next of kin of Donald D. Eustice, Decedent, Respondent,

v.

Evelyn JEWISON, Defendant,

David Jewison, et al., Appellants.

No. C1–86–1185.

Court of Appeals of Minnesota.

Jan. 20, 1987.

William L. Hoversten, Patton, Hoversten, Berg & Zimmer, P.A., Waseca, for respondent.

Robert M. Greising, Greising Law Offices, P.A., Waterville, for appellants.

Heard, considered and decided by POPOVICH, C.J., and PARKER and LESLIE, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a declaratory judgment establishing a wrongful death judgment lien on a homestead attached prior and superior to appellants' interests. Appellants claim the trial court properly determined decedent's homestead exemption continued until his death but should have concluded the homestead descends to appellants exempt from the judgment lien. Respondent also claims trial court error and argues decedent lost his homestead exemption during his lifetime. We affirm.

## FACTS

The parties stipulated to the facts and the trial court adopted those facts as its findings.

On September 4, 1976, decedent Kenneth J. Jewison shot and killed Donald D. Eustice while he was serving a commitment court order on Jewison at his home in Waseca County. On September 7, 1976, by order of the Waseca County Probate Court, Dennis Jewison was appointed special con-

servator of Kenneth Jewison. The next day, the Waseca grand jury returned a first degree murder indictment against Kenneth Jewison.

On October 19, 1976, by joint order of the Waseca County District and Probate Courts, Kenneth Jewison was found to be dangerous to himself and the public, and committed to the St. Peter State Hospital. A week later, the Waseca County Probate Court appointed Dennis Jewison guardian of Kenneth Jewison's estate, a capacity he continued to serve until Kenneth Jewison's death.

On September 12, 1979, while Jewison remained committed at the St. Peter State Hospital, the district court dismissed murder charges against him. On December 31, 1981, the Commissioner of Public Welfare ordered his release conditioned upon his residing at a nursing home approved by the Welfare Department. Although officially discharged from St. Peter State Hospital on January 29, 1982, Jewison remained hospitalized until August 12, 1983 when he moved to Faribault Manor Nursing Home, a state-approved facility. He remained there until his death on June 8, 1984.

At the time of his commitment, Jewison owned two tracts of real estate. He first moved on Tract I in 1939 when it was purchased by his father. He later purchased the land following his father's death and lived there after his children left and first wife died. He remarried and continued to live on the premises until his arrest. Since that time, he has not been free to return because of the October 1976 commitment order. At all times he referred to the property as his homestead.

At the time of his arrest, Jewison's second wife, Evelyn Jewison, left the residence and lived with her daughter in Elysian, Minnesota where she has resided ever since. The estate guardian rented the residence to various tenants from time to time since 1976. At no time did Evelyn Jewison or the estate guardian ever file a notice with the Waseca County Recorder claiming the residence as the Jewisons' homestead pursuant to Minn.Stat. § 510.07.

The Jewisons entered into a premarital agreement in October 1973 in which Evelyn agreed to make no claim to any part of real or personal estate of decedent. In his will, executed in January 1974, however, decedent gave Evelyn a life estate in his homestead.

On January 7, 1980, a judgment in favor of Esther D. Eustice, as trustee for the next of kin of Donald Eustice, was entered against Kenneth J. Jewison in Waseca County District Court for $150,000 pursuant to a stipulation settlement between respondent and Jewison's guardian. Various amounts have since been collected on the judgment, including the proceeds from the sale of Tract II. The amount still outstanding on the judgment as of December 31, 1984 is $83,333.27 plus continuing interest.

In July 1984, respondent commenced this action for declaratory relief seeking an order (1) determining that the 1980 judgment lien is superior to the interests of Evelyn Jewison, Jewison's children and any other claimant in any real property of decedent, and (2) allowing respondent to proceed with an execution sale of the property. On September 7, 1984, judgment was entered for respondent against Evelyn Jewison by default. On April 18, 1986, judgment was entered for respondent against appellant remaining heirs. Evelyn Jewison does not appeal.

In its memorandum attached to the April 18, 1986 judgment, the trial court explained:

> Kenneth Jewison did not lose his homestead because of his nonvoluntary absence, *Millett v. Pearson,* [143 Minn. 187] 173 N.W. 411 (Minn. Supreme Court 1919). Evelyn Jewison abandoned her homestead rights by leaving the property and not filing a M.S. 510.07 Notice and any claim she might assert under the Kenneth Jewison Will dated January 15, 1974, was subordinated to plaintiff's lien by the judgment entered on September 7, 1984. None of the other defendants have a homestead claim.

On May 22, 1986, the court denied appellants' motion for a new trial or amended judgment. Appellants claimed the stipulated facts were incomplete because the Jewisons' premarital agreement and Kenneth Jewison's will were not attached. The court observed the documents were referenced in the stipulation and would not have changed the results of the judgment. The parties have now supplemented the statement of the record to include copies of the documents. In addition, the parties included a claim for Kenneth Jewison's state hospital care, filed by the State of Minnesota pursuant to Minn.Stat. § 246.53, in the amount of $109,741.88. The court approved the parties' supplemental statement of the record November 10, 1986. Appeal is made from the April 18, 1986 judgment.

### ISSUES

1. Did the trial court err in determining decedent did not lose his homestead exemption because of his nonvoluntary absence?

2. Did the trial court err in concluding the judgment lien on the homestead attached prior and superior to appellants' interests?

### ANALYSIS

1. Minn.Stat. § 510.07 (1984) provides:

The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his hands. He may remove therefrom without affecting such exemption, if he does not thereby abandon the same as his place of abode. *If he shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as his homestead.* In no case shall the exemption continue more than five years after such filing, unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or his family.

*Id.* (emphasis added).

In *Muscala v. Wirtjes,* 310 N.W.2d 696 (Minn.1981), the Minnesota Supreme Court held:

[T]he 6-month vacancy rule means that the homestead exemption is lost after 6 months unless the person has filed, no matter what the person's intention.

*Id.* at 698 (citing *First National Bank of Mankato v. Wilson,* 234 Minn. 160, 47 N.W.2d 764 (1951)).

The court has created, however, two narrow exceptions to the notice requirement:

1) A person in jail suffers from a legal disability such that removal from home is not abandonment under § 510.07. *Millett v. Pearson,* 143 Minn. 187, 173 N.W. 411 (1919).

2) Involuntary commitment to a mental institution is not abandonment under 510.07. *Beigler v. Chamberlin,* 145 Minn. 104, 176 N.W. 49 (1920).

*In re Estate of Hoffman,* 354 N.W.2d 581, 583 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Jan. 2, 1985). In *Estate of Hoffman,* this court upheld the trial court's denial of the exemption due to lack of notice because "a need for physical care outside of the home is not tantamount to involuntary commitment." *Id.; see Muscala,* 310 N.W.2d at 698.

■ Respondent filed notice of review of the trial court's determination Jewison did not lose his homestead exemption because of his nonvoluntary absence. Respondent claims in *Millett,* which created a notice requirement exception during incarceration, the court suggested circumstances may show an intention to abandon the homestead. *Millett,* 143 Minn. at 189, 173 N.W. at 412 (finding no proof "from which a presumption can be drawn that [the owner] intended an abandonment of his homestead").

Respondent lists several events alleging an intention to abandon the homestead.

Among the events listed involving Jewison, respondent notes Jewison made no statutory filing under Minn.Stat. § 510.07 after his release from St. Peter State Hospital on August 12, 1983. At that time, he entered a nursing home and remained there ten months until his death in June 1984. Respondent claims since Jewison failed to file notice and nursing home care does not constitute an exception to the notice requirement, Jewison lost his homestead exemption. *See Estate of Hoffman,* 354 N.W.2d at 583.

The stipulated facts indicate, however, Jewison remained under the October 1976 commitment order until his death. The Commissioner of Public Welfare issued his hospitalization release conditioned upon his receiving nursing home care approved by the welfare department. In this case, his state-approved nursing home care was a continuation of his involuntary commitment, thus excepting him from filing notice under Minn.Stat. § 510.07. *Beigler,* 145 Minn. at 107–08, 176 N.W. at 50. Thus, the trial court properly determined Jewison did not lose his homestead exemption during his nonvoluntary absence.

■ 2. Minn.Stat. § 525.145(3) (1984) provides:

Where the homestead passes by decent or will to the spouse or children or issue of deceased children, *it shall be exempt from all debts which were not valid charges thereon at the time of decedent's death except that the homestead shall be subject to a claim filed pursuant to section 246.53 for state hospital care* or 256B.15 for medical assistance benefits. * * * No lien or other charge against any homestead which is so exempted shall be enforced in the probate court, but the claimant may enforce the lien or charge by an appropriate action in the district court.

*Id.* (emphasis added).

Appellants claim since the trial court properly concluded Jewison did not lose his homestead exemption, the judgment lien was not a valid charge against the homestead during his lifetime and upon his death the homestead descends to his spouse and children exempt from the judgment lien under Minn.Stat. § 525.145(3).

Respondent agrees with the trial court's conclusion but advances different reasoning. Respondent claims the judgment lien was a valid charge against the homestead during his lifetime. Minn.Stat. § 548.09, subd. 1 (docketed judgment lien upon real property survives 10 years). The lien was unenforceable, but only temporarily, while the homestead exemption was in effect. Minn.Stat. § 510.01 (exempts homestead sale or seizure). Respondent argues the facts indicate the exemption did not continue after Jewison's death and the judgment lien attached under Minn.Stat. § 510.06 which provides:

If the owner dies leaving a spouse or minor children constituting the owner's family surviving, the homestead exemption shall not be affected by the death. If the owner shall abscond, or otherwise desert the family, the spouse and the minor children comprising the family may retain the homestead, with all the rights of owners therein.

*Id.*

Respondent claims the homestead exemption ceased at Jewison's death because his wife had long since abandoned the homestead and did not dispute the homestead lien. Further, there is no claim appellant children were minors at the time of Jewison's death and they therefore have no claim to a continuing homestead exemption under section 510.06.

We agree, however, with the trial court's reasoning. The wife did not contest the September 7, 1984 declaratory judgment establishing the 1980 judgment lien prior and superior to her interests and she abandoned her interests on his death.

We disagree with respondent's reasoning to the extent respondent claims the exemption ceased at death and the judgment lien then attached. For priority treatment, the judgment lien must have attached to Evelyn's interest prior to Jewison's death because after death, the judgment lien be-

comes subordinate to the state claim filed pursuant to Minn.Stat. § 246.53. A state hospital claim for services provided before death has priority over other claims. Minn. Stat. §§ 525.145(3), 524.3–805.

### DECISION

The trial court properly determined decedent did not lose his homestead exemption during his involuntary commitment which continued until his death. Because decedent's wife abandoned the homestead and failed to protect her interest by filing notice under section 510.07, the trial court properly concluded the wrongful death judgment lien on the homestead attached prior and superior to appellants' interests.

Affirmed.