**Esther D. EUSTICE, as trustee for the next of kin of Donald D. Eustice, Decedent, Respondent,**

v.

**Evelyn JEWISON, Defendant,**

**David Jewison, et al., petitioners, Appellants.**

**No. C1-86-1185.**

Supreme Court of Minnesota.

Oct. 9, 1987.

Robert M. Greising, Waterville, for appellants.

Kay Nord Hunt, Minneapolis, William Hoversten, Waseca, for Esther and Donald Eustice.

YETKA, Justice.

This appeal comes from a declaratory judgment establishing that a wrongful death judgment in favor of respondent, Esther Eustice, attached to decedent Kenneth Jewison's homestead prior to and superior to the interests of appellants, Jewison's surviving children and heirs (hereinafter children). The Waseca County District Court determined that Jewison's homestead exemption continued until his death due to his involuntary commitment. The court also determined that Jewison's surviving spouse abandoned her homestead rights prior to his death. As a result, the court concluded that the wrongful death judgment against Jewison attached prior to and superior to the interests of the children and ordered an execution sale of the property.

The Minnesota Court of Appeals affirmed the district court. *Eustice v. Jewison*, 399 N.W.2d 566 (Minn.App.1987).

This court granted the children's petition for further review. We reverse the court of appeals and remand.

The parties stipulated to the relevant facts, and the district court adopted those facts as its findings.

On September 4, 1976, respondent's decedent, Donald D. Eustice, was shot and killed by appellant's decedent, Kenneth J. Jewison, when Eustice was serving a commitment order at Jewison's Waseca County home. On September 8, 1976, the Waseca County Grand Jury returned an indictment of murder in the first degree against Jewison.

By joint order of the Waseca County District and Probate Courts, Jewison was found to be a danger to himself and the public and was committed to St. Peter State Hospital, St. Peter, Minnesota, on October 19, 1976.

Dennis Jewison, who had been appointed as special conservator of Kenneth on September 7, 1976, was also appointed guardian of Kenneth's estate on October 26, 1976, by the Waseca County Probate Court.

On September 12, 1979, the district court dismissed the murder charges against Kenneth Jewison. Jewison remained under the 1976 commitment order.

The Commissioner of Public Welfare ordered Jewison's release from St. Peter on December 30, 1981, conditioned on his residence in a nursing home approved by the County Welfare Department. Jewison was officially discharged from St. Peter on January 29, 1982, but remained hospitalized there until August 12, 1983, when he moved to the Faribault Manor Nursing Home, Faribault, Minnesota, an approved facility. Jewison remained there until his death on June 8, 1984. He continued to be committed under the order of October 19, 1976, until his death and was never discharged by the Waseca County Probate Court.

At the time of his commitment, Jewison owned two tracts of land. He moved to tract 1 (the homestead) in 1939 when his father purchased the land. In 1961, he purchased tract 1 from his father's estate.

He lived on the property with his family and remained after his first wife died and his children left home. In October 1973, he married Evelyn Seifert (hereinafter Evelyn Jewison), the defendant below. The Jewisons entered a pre-marital agreement in which Evelyn agreed to make no claim to any of Kenneth's real or personal property. In Kenneth's will, executed in January 1974, Kenneth gave Evelyn a life estate in the homestead on tract 1, with the remainder to his children. Kenneth remained sole owner of the land, and the Jewisons lived there together until Kenneth's arrest on September 4, 1976.

Kenneth was never free to return to the land after his arrest because of the commitment order, but at all times referred to the property as his homestead. Evelyn left the property at the time of Kenneth's arrest and never returned. The estate guardian rented the residence from time to time since 1976. Neither Evelyn Jewison, Kenneth Jewison nor the guardian ever filed a notice claiming the residence as the Jewisons' homestead pursuant to Minn.Stat. § 510.07 (1984).

On January 7, 1980, a judgment in favor of respondent, Esther D. Eustice, as trustee for the next of kin of Donald Eustice, was entered against Kenneth Jewison in Waseca County District Court for $150,000 pursuant to a stipulated settlement between respondent and Jewison's guardian. Various amounts have been collected on the judgment. The amount still outstanding as of December 31, 1984, is $83,333.27 plus continuing interest.

In July 1984, after Jewison's death, respondent commenced this action for declaratory relief seeking an order (1) determining that the 1980 judgment is superior to the interests of Evelyn Jewison, Jewison's children and any other claimant in Jewison's real property and (2) allowing execution sale of the property. On September 7, 1984, judgment was entered for respondent against Evelyn Jewison by default. On April 18, 1986, judgment was entered for respondent against the remaining heirs, appellants herein. Evelyn Jewison has not appealed.

The district court determined that Kenneth Jewison did not lose his homestead exemption because of his involuntary commitment, but that Evelyn Jewison abandoned her homestead rights by leaving the property and failing to file a notice pursuant to Minn.Stat. § 510.07 (1984). The court ordered execution sale of the property. On May 22, 1986, the district court denied the children's motion for a new trial or amended judgment.

The record was supplemented on appeal to include copies of the will and pre-marital agreement. In addition, the parties included a claim for Jewison's state hospital care filed by the State of Minnesota pursuant to Minn.Stat. § 246.53 (1984) in the amount of $109,741.88.

The Minnesota Court of Appeals affirmed the district court. *Eustice v. Jewison,* 399 N.W.2d 566 (Minn.App.1987). The court held that the district court properly determined Kenneth Jewison's homestead exemption was not lost due to his involuntary commitment. The court also found no error in the district court's conclusion that a wrongful death judgment on the homestead attached prior to and superior to the children's interests due to Evelyn's abandonment of the homestead.

The children petitioned this court for review of the court of appeals decision, which the court granted.

The issues on appeal are:

I. Did the court of appeals err in determining that Kenneth Jewison did not lose his homestead exemption as a result of his involuntary commitment?

II. Did the court of appeals err in concluding that the judgment lien attached to Jewison's homestead prior to appellant children's interests?

The substance of this case may be reduced to the following:

If Kenneth Jewison did not lose his homestead exemption and it persisted to the date of his death, it appears that his wife and children, by law, would be entitled to the proceeds of any sale of the homestead after payment of the state's claims.

On the other hand, if it is found that Jewison lost his exemption for any reason prior to his death, the Eustice judgment lien would have attached to the real estate and, upon any sale of the said real estate, Eustice would have first claim on the proceeds.

A number of provisions in both our constitution and the statutes of the State of Minnesota are involved in this case. We are setting them out in full herein:

Imprisonment for debt; property exemption. No person shall be imprisoned for debt in this state, but this shall not prevent the legislature from providing for imprisonment, or holding to bail, persons charged with fraud in contracting said debt. A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law. Provided, however, that all property so exempted shall be liable to seizure and sale for any debts incurred to any person for work done or materials furnished in the construction, repair or improvement of the same, and provided further, that such liability to seizure and sale shall also extend to all real property for any debt to any laborer or servant for labor or service performed.

Minn. Const. art. I, § 12.

If the owner dies leaving a spouse or minor children constituting the owner's family surviving, the homestead exemption shall not be affected by the death. If the owner shall abscond, or otherwise desert the family, the spouse and the minor children comprising the family may retain the homestead, with all the rights of owners therein. They shall not have power to sell or mortgage it, except in cases expressly provided for by law.

Minn. Stat. § 510.06 (1984).

The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in his hands. He may remove therefrom without affecting such exemption, if he do

[sic] not thereby abandon the same as his place of abode. If he shall cease to occupy such homestead for more than six consecutive months he shall be deemed to have abandoned the same unless, within such period, he shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming the same as his homestead. In no case shall the exemption continue more than five years after such filing, unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or his family.

Minn. Stat. § 510.07 (1984).

Where the homestead passes by descent or will to the spouse or children or issue of deceased children, it shall be exempt from all debts which were not valid charges thereon at the time of decedent's death except that the homestead shall be subject to a claim filed pursuant to section 246.53 for state hospital care or 256B.15 for medical assistance benefits. If the homestead passes to a person other than a spouse or child or issue of a deceased child, it shall be subject to the payment of the items mentioned in section 525.16. No lien or other charge against any homestead which is so exempted shall be enforced in the probate court, but the claimant may enforce the lien or charge by an appropriate action in the district court.

Minn.Stat. § 525.145, subd. 3 (1984).

The homestead is exempt from the claims of most creditors with only limited exceptions. See Minn.Stat. §§ 510.01, .05 (1984). In addition, the proceeds from the sale of the homestead remain exempt for 1 year. Minn.Stat. § 510.07 (1984).

The homestead remains exempt until the owner abandons the home. Abandonment is deemed to occur when the owner ceases to occupy the home for more than 6 consecutive months unless a notice has been filed with the county recorder. Minn.Stat. § 510.07 (1984).

In *Muscala v. Wirtjes*, 310 N.W.2d 696 (Minn.1981), this court's most recent interpretation of the definition of abandonment, the court held: "[T]he 6–month vacancy rule means that the homestead exemption is lost after 6 months unless the person has filed, no matter what the person's intention." *Id.* at 698 (citing *First National Bank of Mankato v. Wilson*, 234 Minn. 160, 47 N.W.2d 764 (1951)).

In the present case, it is undisputed that Kenneth Jewison neither occupied his homestead nor filed the requisite statutory notice for nearly 8 years. Nevertheless, the court of appeals affirmed the trial court's determination that Jewison had not abandoned his homestead, due to his involuntary commitment. *Eustice*, 399 N.W.2d at 569.

The court relied on two limited exceptions to the 6–month rule previously carved out by this court, applicable when the owner of the homestead is under a legal disability. *Millett v. Pearson*, 143 Minn. 187, 173 N.W. 411 (1919), held that a person in jail for the murder of his wife had not abandoned his homestead due to the involuntary nature of his absence. Similarly, *Beigler v. Chamberlin*, 145 Minn. 104, 176 N.W. 49 (1920), applied *Millett* without comment to hold that involuntary commitment to a mental institution does not constitute abandonment of the homestead.[1]

*Millett* and *Beigler* clearly apply to the facts of this case. From Jewison's arrest on September 4, 1976, until his commitment on October 19, 1976, he was in jail. From October 19, 1976, until his death on June 8, 1984, he was under the October 19 commitment order and was required to reside at St. Peter State Hospital or the Faribault Manor Nursing Home. At no time prior to his death was Jewison free to return to his home.

Respondent argues that the court in *Muscala* adopted a narrower construction of Minn.Stat. § 510.07, applying the 6–

---

1. Neither *Millett* nor *Beigler* refers to the homestead statute. However, R.L. 1905, § 3458, the predecessor to Minn.Stat. § 510.07, is identical in all relevant respects.

month rule strictly no matter what the reason for the owner's absence, thereby creating a conclusive presumption of abandonment after 6 months of non-occupancy if notice has not been filed.

In *Muscala,* the court held that a decedent's absence from his homestead for more than 6 months prior to his death in a nursing home did not justify an exception to the notice requirement. The court found the decedent's intent and desire to return to his home insufficient to create a continuing exemption. *Muscala,* 310 N.W.2d at 698. The owner's intent is irrelevant. *See also First National Bank of Mankato v. Wilson,* 234 Minn. 160, 47 N.W.2d 764 (1951).

The court in *Muscala* expressly did not overrule the prior cases which granted an exemption for legal disability, but, instead, concluded that confinement to a nursing home due to failing health did not constitute legal disability. *Muscala,* 310 N.W.2d at 698. In the present case, on the other hand, Jewison was under a legal disability for the entire period he was absent from his home. Although Jewison was placed in a nursing home, as was the decedent in *Muscala,* Jewison remained under a commitment order and was legally required to reside there until his death.[2]

Respondent also argues that events occurring after Jewison's arrest and commitment furnish further evidence of his abandonment of the homestead. Respondent relies primarily on the failure of Jewison's guardian, his wife or his adult children to file the statutory notice. In effect, respondent urges this court to impute the acts (or failure to act) of the guardian to Jewison to find a waiver of a constitutionally based right.[3]

Jewison died before his release from the commitment order and was never able to return to his homestead. However, if respondent's proposed construction is adopted, any person involuntarily committed to a mental institution for more than 6 months would be faced with the loss of the family homestead.

Such a result would be contrary to this court's longstanding construction of the purpose of the homestead exemption. The court has "consistently construed these provisions liberally in favor of the debtor due to their constitutional roots and the strong social policy of securing the home against the uncertainties and misfortunes of life." *Title Ins. Co. of Minnesota v. Agora Leases, Inc.,* 320 N.W.2d 884, 885 (Minn.1982) (footnote omitted).

Accordingly, we affirm the court of appeals' determination that Jewison did not abandon his homestead as a result of his involuntary commitment.

Appellants claim that, since Jewison retained his homestead exemption until his death, the judgment did not attach during his life. They argue that the homestead, therefore, descends to his children exempt from the judgment under Minn.Stat. § 525.145(3) (1984).

The court of appeals determined that Jewison's homestead remained exempt until his death and recognized that section 525.145(3) was applicable. *Eustice,* 399 N.W.2d at 569. Nevertheless, the court granted priority treatment to respondent's judgment over both the children's interests and the state hospital claim. *Id.* at 570.

The court of appeals' decision appears to be based on the conduct of Evelyn Jewison, the surviving wife. The court seems to conclude that, since the wife abandoned the homestead at Jewison's arrest and has never returned, the judgment against *Kenneth* attached to *Evelyn's* interest prior to his death. *Id.* at 569–70.

---

**2.** Both insanity and imprisonment are recognized disabilities which suspend the running of statutes of limitations. Minn.Stat. § 541.15(2), (3) (1984). "Involuntary" confinement to a nursing home, on the other hand, has not been similarly recognized.

**3.** The legislature has attempted to prevent a guardian or conservator from frustrating the testamentary intent of persons such as Jewison, providing for nonademption of specifically devised property sold during the period of disability. *See* Minn.Stat. § 524.2–608 (1984). Hence, if the guardian had sold the homestead, the children would probably be entitled to the proceeds.

It should be noted that it is sufficient for one spouse to possess the homestead exemption. Minn.Stat. § 510.04 (1984) reads, in relevant part: "If the debtor be married the homestead title may be vested in either spouse, and the exemption shall extend to the debts of either or of both." Thus, Evelyn's abandonment of the homestead prior to Kenneth's death does not change the exempt nature of the property since it remained Kenneth's homestead. *See, e.g., St. Denis v. Mullen,* 157 Minn. 266, 196 N.W. 258 (1923); *Rux v. Adam,* 143 Minn. 35, 172 N.W. 912 (1919). *See also Vickery v. First Bank of La-Crosse,* 368 N.W.2d 758 (Minn.App.1985); *Cleys v. Cleys,* 363 N.W.2d 65 (Minn.App. 1985).

As appellants correctly point out, the judgment in question was entered solely against Kenneth Jewison and could attach only to *his* non-exempt property. In addition, as long as Kenneth retained his homestead, it was also exempt from his wife's creditors. Minn.Stat. § 510.04 (1984). Thus, under the statute, no judgment—against the spouses individually or jointly—could attach to the homestead during Kenneth's life.

The court of appeals determined that the judgment could not attach to Kenneth's interest because of the homestead exemption. Yet, without any cited authority, the court also held that the judgment attached to Evelyn's interest, stating: "For priority treatment, the judgment lien must have attached to Evelyn's interest prior to Jewison's death * * *." *Eustice,* 399 N.W.2d at 569. Since the entire homestead remained exempt until Kenneth's death, however, the judgment could not have attached to either spouse's interest.

The court of appeals also referred to Evelyn's actions after her husband's death. *Id.* Evelyn did not contest the September 7, 1984 declaratory judgment establishing priority of the judgment over her life estate. She also did not claim the life estate after Kenneth's death. Respondent argues that, even if the homestead was exempt at Jewison's death, the exemp-

tion was subsequently lost due to Evelyn's abandonment of the property.

However, Minn.Stat. § 510.06 (1984) provides: "If the owner dies leaving a spouse or minor children constituting the owner's family surviving, the homestead exemption shall not be affected by the death." Since Kenneth left a surviving spouse, the homestead remained exempt at his death.

After Kenneth's death, Evelyn was not required to maintain the exemption to protect the homestead from *his* creditors. "Having been the homestead of her husband, her life estate in the land was not subject to his debts; but to exempt it from her own debts she must have occupied it as her homestead, precisely as anyone else has to do." *Gowan v. Fountain,* 50 Minn. 264, 267, 52 N.W. 862, 863 (1892). Since respondent was only a creditor of Kenneth, the question of Evelyn's homestead exemption after his death is irrelevant.

After determining that respondent's judgment was prior to and superior to the surviving wife's life estate, the court of appeals did not directly address the children's remainder interest. The trial court merely concluded: "None of the defendants have a homestead claim." The children contend that, even if the judgment somehow attached to the wife's life estate due to her abandonment of the homestead, her actions could have no effect on their remainder in fee.

Prior decisions of this court support the children's position. A surviving spouse who receives only a life estate in the homestead cannot encumber the rights of the surviving children who possess the remainder in fee. *See, e.g., Kohrt v. Mercer,* 203 Minn. 494, 282 N.W. 129 (1938); *Nordlund v. Dahlgren,* 130 Minn. 462, 153 N.W. 876 (1915). The court's statement in *Nordlund* appears applicable to the present facts:

> On the death of Carrie Walberg, the title in fee to her homestead vested in her children, subject only to the life estate of her surviving husband, and no waiver or other act of his could impair the rights secured to the children by the statute. He could make such disposition of his life term as he saw fit, but he could not

convert the homestead into assets of the estate, nor subject the fee which had vested in the children to any burdens whatever.

*Nordlund*, 130 Minn. at 467, 153 N.W. at 878.

The fact that none of Jewison's children has a homestead interest also has no effect. The court has previously rejected the argument that the homestead must be occupied as such after the death of the owner to protect it from the decedent's debts. *Larson v. Curran*, 121 Minn. 104, 111, 140 N.W. 337, 339 (1913).

Similarly, the fact that the children are not minors does not control. There may be confusion underlying the decision below because of a reference to "minor children" in Minn.Stat. § 510.06 while section 525.145(3) refers to "children or issue of deceased children." This court has apparently never addressed this distinction, which appellants claim is a conflict between the two statutes.

The homestead exemption is intended to preserve the homestead as a dwelling for the debtor and his or her family. However, the definition of "homestead" requires that the house be *"owned* and occupied" by the debtor. Minn.Stat. § 510.01 (1984). Section 510.06 specifically refers to the absence or death of the *owner.* Thus, the primary purpose of the section is to protect the remaining spouse and/or minor children who occupy, but do not own, the home. This protection would be especially essential if, for example, the owner abandoned the homestead and the family. Without this protection, the minor children could lose the homestead after 6 months and, consequently, be left homeless. When only adult children remain, the legislature could have reasonably concluded that the need for protecting the homestead as a place of shelter is not as critical.

On the other hand, the homestead descends free of a decedent's debts if it passes to children or issue of deceased children; this protection is not limited to minors. Minn.Stat. § 525.145(3) (1984). The legislative purpose here is not necessarily to protect occupancy, but to ensure that the homestead remains within the decedent's family rather than satisfying his or her creditors. Under this interpretation, the different treatment afforded minor and adult children is not necessarily unreasonable.

■ Finally, respondent argues that, under the facts of this case, the purpose of the homestead exemption—to preserve the homestead for the debtor's family—will not be served since the property must be sold to satisfy the state hospital claim. Respondent further objects that the state will receive payment on a lien that was initially inferior to her judgment.

However, this appears to be the result intended by the legislature. The statute governing descent of the homestead expressly provides for descent free of all debts *except* for state hospital care or medical assistance. Minn.Stat. § 525.-145(3) (1984). Presumably, the legislature recognized that, in some circumstances, the homestead would not necessarily be preserved. The statute also appears to intend to grant priority treatment to state hospital claims while maintaining an exemption for other creditors' claims. However, as the court has previously recognized, the homestead exemption often operates to defeat the just claims of creditors. *See, e.g., Denzer v. Prendergast*, 267 Minn. 212, 216, 126 N.W.2d 440, 443 (1964); *Tomlinson v. Kandiyohi County Bank*, 162 Minn. 230, 234, 202 N.W. 494, 495 (1925).

The court of appeals was correct insofar as it found that the decedent had not abandoned his homestead. It is reversed in its conclusion that the homestead exemption was lost. Accordingly, the title to the decedent's homestead vested in his devisees under the provisions of his will at the time of his death, namely, his wife and children, free and clear of the Eustice judgment.

The case is remanded to the trial court for entry of judgment consistent with this opinion.