In re Barbara J. TURNER, Debtor.

Barbara J. TURNER, Appellant,

v.

CALIFORNIA DEPARTMENT OF REAL ESTATE and Commissioner of Real Estate, Appellees.

BAP No. NC–95–2299–VRAs.
Bankruptcy Nos. 93–3–0392 (Ch. 7), 94–3–4757 (Ch. 13).
Adv. No. 95–3–171 DM.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 24, 1996.

Decided Aug. 2, 1996.

Barbara J. Turner, Woodside, CA, pro se.

Paul D. Gifford, Oakland, CA, Daniel Taafe, San Francisco, CA, for Appellees.

Before: VOLINN, ASHLAND, and RUSSELL, Bankruptcy Judges.

### OPINION

VOLINN, Bankruptcy Judge:

The debtor, Barbara Turner, claimed that the California Department of Real Estate (DRE) violated the anti-discrimination provisions of Section 525(a) [1] by suspending her

---

1. Unless otherwise stated, all references to "sections", "§" and "rules" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101 et seq.

Section 525(a) states in pertinent part: "a governmental unit may not deny, revoke, suspend or refuse to renew a license ... [of] a person that is

real estate license after it paid a claim out of the state's real estate recovery fund to individuals with a nondischargeable claim against the debtor. The court below dismissed the debtor's complaint for failure to state a claim upon which relief can be granted and the debtor appeals. We affirm.

## BACKGROUND FACTS[2]

The debtor, Turner, was a real estate agent in California. She and Philip Wire owned a real estate partnership which, in an effort to finance a residential condominium development in Palo Alto, California, solicited a $50,000 loan from Barbara Runser and John Boldt. In a state court trial, a jury found that during negotiations, Turner repeatedly misled Runser and Boldt.

After Turner defaulted on the loan, Runser and Boldt sued Turner and Wire in state court for fraud. Wire settled with the plaintiffs for $18,000. The suit against Turner was tried before a jury. The jury found Turner guilty of fraud and awarded general damages of more than $85,000 and punitive damages of $125,000; the court awarded nearly $75,000 in attorney's fees. In March, 1989, the court awarded a total judgment of approximately $265,000 (which included an $18,000 credit for the plaintiffs' settlement with Wire). Turner appealed and the California court of appeals upheld the judgment. The California Supreme Court and the U.S. Supreme Court denied her petitions for certiorari.

Turner filed a chapter 11 petition in September, 1989, which was later converted to chapter 7. Upon a motion by Runser and Boldt, the bankruptcy court found that the state court judgment was nondischargeable. Turner appealed to the BAP, which found that only the compensatory portion of the judgment and the attorney's fees were nondischargeable, and reversed and remanded for a determination whether the punitive damages were nondischargeable. According to Turner, on remand, the court found that the punitive damages were dischargeable.

Runser and Boldt applied to the DRE for reimbursement from the California Real Estate Recovery Program, a state program designed to provide compensation to individuals who have been defrauded by a real estate licensee. Under this program, an applicant who obtains a final judgment in state court against a real estate licensee on the grounds of fraud, misrepresentation, deceit or conversion of trust funds may apply to the DRE for payment from the Recovery Account for the uncollected portion of his or her judgment against the licensee. If the Recovery Account pays the applicant, the licensee's license is automatically suspended until the licensee reimburses the Recovery Account. Cal.Bus. & Prof.Code at § 10475.[3] The statutory scheme allows for notice to the licensee, a chance for the licensee to oppose the motion and a right to seek judicial review by petitioning the superior court for a writ of mandamus. See Id. at §§ 10471–10472.

The DRE, which had not sought relief from the automatic stay,[4] paid Runser and

or has been a debtor under this title ... solely because such ... debtor is or has been a debtor under this title, ... or has not paid a debt that is dischargeable in the case under this title."

**2.** Some of the facts regarding prior bankruptcy proceedings are taken from in *In re Turner,* BAP No. NC–91–2123–RJAs (9th Cir. BAP 1992). Although the disposition in that case was unpublished, a court may take judicial notice of its own opinions, whether published or not. *Scott v. Angelone,* 771 F.Supp. 1064, 1068 (D.Nev.1991); *Latta v. Western Inv. Co.,* 173 F.2d 99, 103 (9th Cir.1949).

**3.** Cal.Bus. & Prof.Code § 10475 reads in pertinent part: "Should the commissioner pay from the Recovery Account any amount in settlement of a claim or toward satisfaction of a judgment

against a licensed broker or salesperson, the license of the broker or salesperson shall be automatically suspended upon the date of payment from the Recovery Account. No broker or salesperson shall be granted reinstatement until he or she has repaid in full, plus interest at the prevailing legal rate applicable to a judgment rendered in any court of this state, the amount paid from the Recovery Account on his or her account." (West 1987).

**4.** In an earlier bankruptcy proceeding in Judge Tchaikovsky's court, Ms. Turner sought an injunction to prevent the DRE from paying Runser and Boldt and from suspending her license, alleging that those actions by the DRE would violate the automatic stay. Following a hearing, Judge Tchaikovsky denied the application for injunction and dismissed the action.

Boldt the statutory maximum of $20,000. Under state law, the payment resulted in a partial assignment of the fraud judgment to the DRE. Cal.Bus. & Prof.Code § 10479.[5] Payment from the Recovery Account also automatically resulted in the suspension of Turner's real estate broker's license. The DRE's memorandum in support of its motion to dismiss, filed below, states that Turner opposed the DRE's actions and unsuccessfully sought a writ of mandamus from the superior court but does not explain her claimed basis for the writ. Turner has not claimed that the DRE failed to follow the proper statutory procedures and the DRE has made no attempt to collect the debt.

In this action, Turner, acting *in propria persona*, alleged that the DRE discriminated against her in violation of Section 525(a), when it suspended her license.[6] In her complaint, Turner alleged that prior to the payment by the DRE, Wire paid Runser and Boldt an amount that fully satisfied the non-dischargeable portion of Turner's debt to them and, therefore, any debt she still would owe to Runser and Boldt has been discharged.[7] Turner argues that the DRE did not fully investigate whether Runser and Boldt had been paid, and that if it had, it would not have paid Runser and Boldt or suspended her license.

The DRE moved to dismiss under Fed. R.Civ.P. 12(b)(6), arguing that Turner had failed to state a claim under which relief could be granted. Following a hearing, the court dismissed the complaint without leave to amend, stating that:

I believe that—to the extent that I previously indicated—that the—any complaint

that the DRE made a payment that wasn't supposed to be made and, in fact, that the claimants were paid twice, is something that really has to be taken up with the DRE and it doesn't belong here. And there is no allegation that this payment was made—or, rather, the license suspension has occurred because you haven't paid a debt that is dischargeable.

Turner appeals.

## ISSUES

Whether the court erred when it dismissed Turner's complaint without leave to amend under Fed.R.Civ.P. 12(b)(6).

## STANDARD OF REVIEW

The dismissal of the debtor's amended complaint without leave to amend under Fed.R.Civ.Pro. 12(b)(6) for failure to state a cognizable claim under Section 525(a) is a legal question, and this court reviews the decision *de novo*. *Kruso v. International Telephone and Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989). Although the bankruptcy court's dismissal order does not specify the deficiencies in Turner's complaint, this Panel can affirm the dismissal on any basis supported by the record. *In re Prize Frize, Inc.*, 150 B.R. 456, 461 n. 11 (9th Cir. BAP 1993).

## DISCUSSION

Section 525 prohibits a government agency from suspending a license solely because a licensee "is or has been a debtor" under federal bankruptcy law or "has not paid a debt that is dischargeable." *See In re Walker*, 927 F.2d 1138 (10th Cir.1991) (hold-

---

5. Cal.Bus. & Prof.Code § 10479 provides in pertinent part: "When, the commissioner has paid from the Recovery Account any sum to the judgment creditor, the commissioner shall be subrogated to all of the rights of the judgment creditor and the judgment creditor shall assign all of his or her right, title, and interest in the judgment to the commissioner and any amount and interest so recovered by the commissioner on the judgment shall be deposited to the Recovery Account." (West 1987).

6. Ms. Turner initially filed four counts against the DRE. Three counts alleged damages for the DRE's alleged violation of the automatic stay.

The bankruptcy court dismissed these counts without leave to amend, stating that it would be improper for the court to question Judge Tchaikovsky's decision to let the DRE proceed. Ms. Turner did not appeal the dismissal of the three counts. The bankruptcy court also dismissed the fourth count with leave to amend. The dismissal of the amended and refiled fourth count is at issue here.

7. Her complaint read: "[t]he compensatory damages portion of the debt for which the Department of Real Estate paid $20,000 from the Recovery Fund has been paid; any unpaid portion is dischargeable."

ing that a Utah statute similar to the California statute here violates the Supremacy Clause to the extent that it revokes a debtor's real estate license for failure to reimburse the state fund for a debt discharged in bankruptcy). Under *Walker*, if Turner's debt to Runser and Boldt had been found to be dischargeable, the DRE would be in violation of Section 525(a). The DRE distinguishes this case from *Walker*, however, arguing that a significant portion of Turner's debt was found to be nondischargeable. Turner responds, and the court must accept for purposes of determining whether summary judgment is appropriate, that her debt to Runser and Boldt had been satisfied by Wire prior to any payment by the DRE and, therefore, at the time the DRE made payment she did not have a nondischargeable debt. Turner argues that the DRE violated Section 525(a) when it paid Runser and Boldt because any monies owing to Runser and Boldt were dischargeable and that the bankruptcy court is the proper forum to hear her arguments.

No Ninth Circuit or BAP caselaw has articulated the essential elements of a claim under Section 525(a). However, the statute specifically provides that a governmental unit may not suspend or refuse to renew a license because the licensee "has not paid a debt that is dischargeable" in the bankruptcy.

■ When the DRE paid Runser and Boldt, it was assigned a portion of a nondischargeable debt. The debt continued to be nondischargeable in its hands: "The assignee of a claim takes the claim with all rights attendant, and therefore the nondischargeable character of the debt in the hands of the original claimant is transferable." *In re Florida*, 164 B.R. 636, 640 (9th Cir. BAP 1994). Turner has not alleged that the DRE suspended her license for her refusal to pay a debt that is dischargeable. Turner ac-

knowledges that the Recovery Account paid only the nondischargeable portion of Runser and Boldt's debt. Instead, Turner alleges that the DRE suspended her license for failure to pay a debt that was *satisfied* prior to payment. Turner's argument confuses the existence of a debt with dischargeability of the debt. The DRE's debt may have been satisfied, but it was not discharged. Therefore, the DRE did not suspend Turner's license for a failure to pay a discharged debt.

Assuming *arguendo* that Turner's allegations as to satisfaction are true, the DRE's suspension of her license for failure to pay a non-existent debt may be unwarranted. But, as the court below stated, that is not "an issue that implicates the bankruptcy." [8]

Turner contends, however, that the bankruptcy court is the proper forum to determine whether the debt owed by Turner has been paid, relying on *MSR Exploration, Ltd. v. Meridian Oil*, 74 F.3d 910, 914 (9th Cir. 1996).[9] In *MSR Exploration*, the Ninth Circuit determined that state malicious prosecution claims for events taking place in the bankruptcy court are governed by federal law. The court was concerned that "[t]he threat of later state litigation may well interfere with the filings of claims by creditors and other necessary actions that they, and others, must or might take within the confines of the bankruptcy process" and that "[w]hether creditors should be deterred, and when, is a matter unique to the flow of the bankruptcy process itself." *MSR Exploration*, 74 F.3d at 916. In this case, however, such a circumstance is not present.

## CONCLUSION

Because satisfaction of the debt is irrelevant for purposes of Section 525(a), the court properly refused to hear evidence that the

---

8. The court told Ms. Turner that: "if you believe that Mr. Wire has fully satisfied your obligation, take it up with the Superior Court, and take it up with the Department, but not here under a relief from stay theory.... [I]f your real complaint is the Department wrongfully paid money because Boldt and Runser were paid, take it up with the Department in a proper forum."

9. In *MSR Exploration*, a debtor brought a malicious prosecution action against several oil companies that had filed a claim against the debtor in bankruptcy. The debtor had objected to the claim, but did not seek sanctions, attorney's fees or any other remedy in the bankruptcy court. Instead, the debtor waited until its reorganization plan was confirmed and substantially consummated before bringing a state malicious prosecution claim in the district court.

debt was satisfied. This conclusion encompasses Turner's contention that the court should not have dismissed her case before requiring the DRE to comply with her discovery requests. Since the court properly determined that there were no facts Turner could prove that would give her relief under Section 525(a), discovery was irrelevant.

AFFIRMED.