**United States Bankruptcy Appellate Panel**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-6059
_____

In re: Marlyce Eilene Mueller      *
     *
      Debtor      *
     *
Marlyce Eilene Mueller      *
     *    Appeal from the United
States
      Appellant      *    Bankruptcy Court for
the
     *    District of Minnesota
      v.      *
      *
Sheridan J. Buckley       *
     *
      Appellee      *

_____

Submitted: December 16, 1997
Filed:  January 28, 1998
_____

Before KOGER, Chief Judge, HILL, and SCOTT, Bankruptcy Judges.
_____

WILLIAM A. HILL, Bankruptcy Judge:

The debtor, Marlyce Eilene Mueller ("Marlyce"), appeals from the final order of the bankruptcy court[1] sustaining the trustee's objection to her claim of a homestead exemption in her lien against the marital residence which she once shared with her former husband,

---

[1]The Honorable Gregory F. Kishel, United States Bankruptcy Judge for the District of Minnesota.

Robert Mueller ("Robert"), and which he was awarded at the conclusion of their divorce proceedings.  Marlyce's appeal turns upon whether she retained a cognizable interest in the marital residence at the time she filed her petition in bankruptcy.  We affirm the order of the bankruptcy court, but for reasons apart from those upon which the court relied.

## I.    FACTUAL AND PROCEDURAL HISTORY

Marlyce and Robert owned a residence in Northfield, Minnesota ("Northfield Residence"), in joint tenancy, and in which they both resided prior to February 27, 1994.  On that date, Marlyce vacated the family home, and moved into a rented mobile home located in Kenyon, Minnesota.  Later in 1994, she moved the mobile home to Farmington, Minnesota, where she resided until April 1, 1996.[2]  On that date, she purchased and moved into a residence in St. Paul, Minnesota.  Marlyce's bankruptcy case was filed on July 19, 1996.

During the course of their 17-year marriage, Marlyce and Robert experienced  a contentious relationship which, at times, led them to temporarily separate.  After the parties separated and Marlyce vacated the Northfield residence on February 27, 1994, and until the 1994 Christmas holidays, they frequently visited one another, both alone and in the company of their children; considered reconciliation;  and occasionally stayed overnight together in the Northfield residence.  However, after an antagonistic incident on Christmas Day, 1994, Marlyce resolved to formally end her marriage to Robert.

---

[2]On January 30, 1997, during an evidentiary hearing before the bankruptcy court on the trustee's objection to Marlyce's claim of a homestead exemption in the Northfield residence, Marlyce testified that as of August 1995, she resided in a mobile home located in Farmington, Minnesota, which she subsequently purchased in September 1995, and for which she filed a homestead declaration for tax assessment purposes.  The record before us does not indicate whether this mobile home is the same as that in Kenyon, Minnesota, which she originally rented upon vacating the Northfield residence in February 1994.

In January 1995, Marlyce commenced proceedings to dissolve their marriage. On April 5, 1995, the State District Court entered an Order for Temporary Relief ("temporary

order") in the matter, awarding Robert "the sole temporary use and occupancy of [the Northfield residence]." Marlyce and Robert subsequently entered into a Marital Termination Agreement whereby Robert received title to and possession of the Northfield residence. This agreement was approved by the court and incorporated into its Judgment and Decree of Dissolution of Marriage ("dissolution decree"), entered on January 31, 1996. Concerning the parties' residences, the dissolution decree provided as follows:

> 7. Homestead. [Robert] is awarded the entire right, title, interest and equity in and to the homestead of the parties, located in Rice County, Minnesota being legally described as: Lot 7, Block 2, Keya Paha Ranch, First Subdivision, Rice County, Minnesota, according to the recorded plat thereof on file and of record in the office of the County Recorder, Rice County, Minnesota[;] subject to the encumbrances thereon, which [Robert] shall pay according to their terms and hold [Marlyce] harmless therefrom, and subject to a non-interest bearing lien in favor of [Marlyce] on said real estate in the amount of $45,000. The lien shall be due and payable upon the occurrence of the first of the following events:
> a. [Robert] moving from the residence;
> b. The death of [Robert] or the parties' daughter, Elizabeth;
> c. [Robert's] remarriage;
> d. Elizabeth's emancipation;
> e. October 31, 1998;
> f. Failure of [Robert] to timely pay all mortgage, tax, insurance and utility payments on the homestead.
> . . . .
> [Marlyce] shall execute a Quit Claim Deed in favor of [Robert]. At such time as [Marlyce's] lien is satisfied, [Robert] shall execute a Satisfaction of Marital Lien in recordable form, releasing any further interest in the homestead.
>
> 9. Mobile Home. That [Marlyce] is awarded all right, title and interest in and to the mobile home in which she resides, free and clear of any claim on the part of [Robert] and shall assume any encumbrance thereon, and hold [Robert] harmless therefrom.

After Marlyce filed for bankruptcy protection on July 19, 1996, Robert continued to reside in the Northfield residence along with the parties' minor daughter, who, at that time, was a high school student and was unemancipated. Although Robert did not make any payments to Marlyce on the $45,000.00 lien obligation before she filed her petition in bankruptcy, she ultimately expected the satisfaction of his indebtedness to her, per the terms of the dissolution decree, so as to aid in the purchase of her St. Paul residence.[3]

In her schedules, Marlyce listed the following property interests which are pertinent to this appeal: Schedule A, entitled "Real Property," she listed her St. Paul residence, and named herself as "owner"; and Schedule B, at Item 16, entitled "Alimony, Maintenance, Support and Property Settlements to which the debtor is . . . entitled," she listed her $45,000.00 lien on the Northfield residence. In Schedule C, pursuant to 11 U.S.C. § 522(b)(2)(A), Marlyce elected to use the exemptions afforded to judgment debtors under Minnesota state law, and claimed her interest in the lien as exempt. The trustee timely objected to her claim of exemption in the lien.

The bankruptcy court sustained the trustee's objection and disallowed Marlyce's claim of exemption, holding that Marlyce "has no allowable exemption under Minnesota statute for her right to payment from Robert."[4] The court specifically concluded that Marlyce's right to payment from Robert "is not protectible as 'proceeds' within the scope of [Section]

---

[3]In the purchase agreement for the St. Paul residence, Marlyce agreed to pay $5,000.00 as a down payment and $45,000.00 to the seller on or before November 1998. Per the dissolution decree, the lien became "due and payable" by October 31, 1998 at the latest, and earlier upon the occurrence of any of the contingent events provided for in the decree.

[4]In so doing, the court expressly overruled In re Joy, 5 B.R. 681 (Bankr. D. Minn. 1980), which held that a debtor "compelled by court order to leave and remain away [from his homestead] until such time as a determination was made in [his] marriage dissolution proceedings"--a period of more than two years--"never left his home," and "sufficiently 'owned and occupied' his home to maintain his homestead exemption." Id. at 683. By overruling of In re Joy, the bankruptcy court eliminated the exception it created to the strict language of Minnesota Statute 510.07.

5

510.07." As a basis for this holding, the court made the following determinations: (1) the exchange of Marlyce's undivided one-half interest as joint tenant in the Northfield residence, into a secured right to payment, was a "sale" within the meaning of Section 510.07; (2) the date of the "sale" was fixed as of the date on which the dissolution decree was entered, January 31, 1996; (3) proceeds are cash, and cash only, and are protected by the statute only to the extent actually received in-hand by a debtor within one year of a sale; and (4) Marlyce did not receive "cash traceable to her interest in the marital dwelling . . . within one year of the dissolution."

On appeal, Marlyce argues that she is deemed to have occupied the Northfield residence pursuant to the provisions of Minnesota Statute § 510.07, and, as such, that she is entitled to an exception to the notice requirement under the statute due to a "legal incapacity." In this respect, she argues that (1) after the entry of the temporary state court order awarding Robert the sole use and occupancy of the Northfield residence, she was deemed to have occupied her homestead because she was prevented from actual occupancy by operation of law, and (2) her short visits with her former husband in their Northfield residence constituted "occupancy" within the meaning of Section 510.07, thus interrupting the tolling of its six-month abandonment period. She additionally contends that her $45,000.00 lien against the Northfield residence constitutes "proceeds" within the meaning of not only Section 510.07, but also state case law, and is therefore exempt from any judgment or debt for a period of one year from the date of the dissolution decree.

The trustee contends that Marlyce is ineligible to claim a homestead exemption in the Northfield residence under Section 510.07, because, (1) she did not own and occupy the residence as her dwelling place as of the filing of her petition in bankruptcy, and (2) she failed to meet the statute's notice requirement, thereby rendering the homestead exemption to which she was once entitled nonexistent six months after the date upon which she vacated or "abandoned" it. The trustee counters Marlyce's "proceeds" claim by arguing that Section 510.07 extends exemption status to proceeds of the sale of a homestead only for one year, and therefore they become subject to creditors' claims. The trustee asserts that the lien obligation "will not become payable, in the absence of death or remarriage, until October 31, 1998[, and thus] is . . . . not payable within one year," and therefore cannot be exempted.

6

The  issue thus presented, and to which we now turn, is whether the bankruptcy court erred in sustaining the trustee's objection to Marlyce's claim of a homestead exemption in the Northfield residence.

## II.  STANDARD OF REVIEW

On appeal, the bankruptcy court's findings of fact are reviewed for clear error and its legal determinations are reviewed de novo.  O'Neal v. Southwest Mo. Bank of Carthage (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997);  Natkin & Co. v. Myers (In re Rine & Rine Auctioneers, Inc.), 74 F.3d 848, 851 (8th Cir. 1996);  Hartford Cas. Ins. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 214 B.R. 197 (B.A.P. 8th Cir. 1997); see also Fed. R. Bankr. P. 8013.[5]  A debtor's entitlement to an exemption in bankruptcy is a question of law subject to de novo review.  Armstrong v. Peterson (In re Peterson), 897 F.2d 935, 937 (8th Cir. 1989);  Steiner & Saffer v. Kasden (In re Kasden), 186 B.R. 667, 671 (D. Minn. 1995);  cf. Ramsay v. Dowden (In re Central Ark. Broad. Co.), 68 F.3d 213, 214 (8th Cir. 1995) ("Whether property is included in the bankruptcy estate is a question of law.").   We may affirm the bankruptcy court upon any basis supported by the record. Allstate Fin. Corp. v. United States, 109 F.3d 1331, 1333 (8th Cir. 1997);  Dicken v. Ashcroft, 972 F.2d 231, 233 (8th Cir. 1992);  Brown v. Mitchell (In re Arkansas Communities, Inc.), 827 F.2d 1219, 1222 (8th Cir. 1987);  Turner v. California Dep't of Real Estate (In re Turner), 199 B.R. 694, 696 (B.A.P. 9th Cir. 1996).

## III.  DECISION

Pursuant to Section 522(b)(2)(A) of the United States Bankruptcy Code, a debtor may exempt from property of the estate that property which is provided for under the exemption

---

[5]Rule 8013 of the Federal Rules of Bankruptcy Procedure provides in relevant part that, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.

provisions of applicable state law. 11 U.S.C. § 522(b)(2)(A)[6]; see Armstrong v. Peterson (In re Peterson), 897 F.2d 935, 936 (8th Cir. 1989); Hanson v. First Nat'l Bank, 848 F.2d 866, 868 (8th Cir. 1988). Under this section, a debtor's right to an exemption is fixed as of the date of his or her filing in bankruptcy. 11 U.S.C. § 522(b)(2)(A); see In re Peterson, 897 F.2d at 937; In re Smoinikar, 200 B.R. 640, 643 (Bankr. D. Minn. 1996); In re May, 194 B.R. 853, 855 (Bankr. D. S.D. 1996); In re Jones, 193 B.R. 503, 507 (Bankr. E.D. Ark. 1995); accord Wallace T. Bruce, Inc. v. Najarian, 249 Minn. 99, 115, 81 N.W.2d 282, 297 (1957). Where a debtor chooses to exempt property pursuant to state statute, courts necessarily determine his or her eligibility thereunder by looking to state law. Sholdan v. Dietz, 108 F.3d 886, 888 (8th Cir. 1996); In re Peterson, 897 F.2d at 939; Hanson, 848 F.2d at 868; In re Smoinikar, 200 B.R. at 643; accord Najarian, 249 Minn. at 115, 81 N.W.2d at 297. "We are bound to apply state law as we are able to discern it from the rulings of the state's courts." Fogie v. Thorn Americas, Inc., 95 F.3d 645, 653 (8th Cir. 1996) (quoting Boner v. Eminence R-1 Sch. Dist., 55 F.3d 1339, 1341 (8th Cir. 1995), in turn quoting Jackson v. Anchor Packing Co., 994 F.2d 1295, 1310 (8th Cir. 1993)), cert. denied, --- U.S. ---, 117 S. Ct. 1427, 137 L.Ed.2d 536 (1997).

In the instant matter, Marlyce claims a homestead exemption in her lien against the Northfield residence under the laws of Minnesota. Minnesota's homestead exemption is a right enshrined under its Constitution, Minn. Const. art. I, § 12, as well as under its statutory provisions--including, inter alia, Minnesota Statutes §§ 510.01 - 510.09. Minnesota's homestead exemption "has long been recognized as important in providing a 'sanctuary' for a debtor's home, notwithstanding the just demands of creditors. . . . [and] as a 'wise and humane policy' which is in the best interest of the state." Euerle Farms, Inc., 441 N.W.2d at 124 (quoting Cargill, Inc. v. Hedge, 375 N.W.2d 477, 478-79 (Minn. 1985)). Indeed, it is intended to "secur[e] the home against the uncertainties and misfortunes of life," Title Ins. Co. v. Agora Leases, Inc., 320 N.W.2d 884, 885 (Minn. 1982), in order to "preserve it as a

---

[6]Section 522(b)(2)(A) provides, in pertinent part, that, "an individual debtor may exempt from property of the estate . . . . any property . . . exempt under Federal law, . . . or State or local law that is applicable on the date of the filing of the petition [in bankruptcy]. . . ." 11 U.S.C. § 522(b)(2)(A).

dwelling for the debtor and his or her family," Eustice v. Jewison, 413 N.W.2d 114, 120 (Minn. 1987). See Northwestern Nat'l Bank of South St. Paul v. Kroll, 306 N.W.2d 104, 105 (Minn. 1981). Accordingly, the exemption has been liberally construed by the courts of Minnesota. Agora Leases, Inc., 320 N.W.2d at 885; Vickery v. First Bank of LaCrosse, 368 N.W.2d 758, 762-63 (Minn. Ct. App. 1985), review denied (Minn. Aug. 20, 1985); Denzer v. Prendergast, 267 Minn. 212, 218, 126 N.W.2d 440, 444 (Minn. Ct. App. 1964).

Pursuant to the Minnesota Constitution, "No person shall be imprisoned for debt in this state . . . . A reasonable amount of property shall be exempt from seizure or sale for the payment of any debt or liability. The amount of such exemption shall be determined by law." Minn. Const. art. I, § 12. The scope of this exemption is defined under Chapter 510 of the Minnesota Statutes. Jensen v. Jensen (In re Jensen), 414 N.W.2d 742, 745 (Minn. Ct. App. 1987), review denied (Minn. Jan. 15, 1988). Minnesota law protects a debtor's homestead from forced sale or seizure, Minn. Stat. § 510.01;[7] see State Bank v. Euerle Farms, Inc., 441 N.W.2d 121, 124 (Minn. Ct. App. 1989), review denied (Minn. July 29, 1989), and requires a de minimis showing that a debtor claiming the exemption in a residence, (1) "own and occupy" the house,[8] (2) as his or her "dwelling place," Minn. Stat.

---

[7]Subject to several exceptions which are not pertinent to this appeal, Section 510.01 provides that,

> The house owned and occupied by a debtor as the debtor's
> dwelling place, together with the land upon which it is
> situated to the amount of area and value hereinafter limited
> and defined, shall constitute the homestead of such debtor and
> the debtor's family, and be exempt from seizure or sale under
> legal process on account of any debt not lawfully charged
> thereon in writing.

Minn. Stat. § 510.01.

[8]We note, as a point of clarification, that Marlyce did not possess an ownership interest in the Northfield residence at the time of her bankruptcy filing. Pursuant to the dissolution decree, Marlyce held a lien on the Northfield property securing her right to be paid the sum of $45,000.00 from Robert, and nothing more. Under the law of Minnesota, a lien does not constitute an interest in land. See Oldewurtel v. Redding (In re

9

§ 510.01; see Eustice, 413 N.W.2d at 120; Muscala v. Wirtjes, 310 N.W.2d 696, 697-98 (Minn. 1981). Thus, Minnesota courts have construed this statute to require that a debtor's homestead be his or her actual place of abode. See, e.g., Muscala, 310 N.W.2d at 698; Clark v. Dewey, 71 Minn. 108, 110, 73 N.W. 639-40 (Minn. 1898); Quehl v. Peterson, 47 Minn. 13, 15-16, 49 N.W. 390, 391 (Minn. 1891); Hentges v. P.H. Feely & Son, Inc., 436 N.W.2d 488, 491 (Minn. Ct. App. 1989); Vickery, 368 N.W.2d at 763-64.

Of additional import in this appeal is Minnesota Statute § 510.07, which excepts from creditors' levy the proceeds from the sale of a homestead for a period of one year after such sale.[9] Minn. Stat. § 510.07; see Eustice, 413 N.W.2d at 118; Muscala, 310 N.W.2d at 698.

---

Oldewurtel), 421 N.W.2d 722, 726 (Minn. 1988); Gau v. Hyland (In re Gau), 230 Minn. 235, 240, 41 N.W.2d 444, 448 (1950); Bidwell v. Webb, 10 Minn. 59, 62 (Minn. 1865); Granse & Assocs., Inc. v. Kimm, 529 N.W.2d 6, 8 (Minn. Ct. App. 1995); State Bank v. Schwenk, 395 N.W.2d 371, 375 (Minn. Ct. App. 1986), review denied (Minn. Nov. 26, 1986). It is, rather, merely "collateral for a debt." In re Oldewurtel, 421 N.W.2d at 726; see Hennepin County v. Jacobson (In re Eggert), 245 Minn. 401, 403, 72 N.W.2d 360, 361 (1955); In re Gau, 230 Minn. at 240, 41 N.W.2d at 448; Host v. Host, 497 N.W.2d 617, 619 (Minn. Ct. App. 1993).

[9]Section 510.07 reads in pertinent part,

> The owner may sell and convey the homestead without subjecting it, or the proceeds of such sale for the period of one year after sale, to any judgment or debt from which it was exempt in the owner's hands, except that the proceeds of the sale are not exempt from a judgment or debt for a court ordered child support or maintenance obligation in arrears. . . . The owner may remove therefrom without affecting such exemption, if the owner does not thereby abandon the same as the place of abode. If the owner shall cease to occupy such homestead for more than six consecutive months the owner shall be deemed to have abandoned the same unless, within such period, the owner shall file with the county recorder of the county in which it is situated a notice, executed, witnessed, and acknowledged as in the case of a deed, describing the premises and claiming

10

This exemption ceases to apply, however, when a homestead has been abandoned by its owner. "Abandonment is deemed to occur when the owner ceases to occupy the home for more than [six] consecutive months unless a notice has been filed with the county recorder." Eustice, 413 N.W.2d at 118; Muscala, 310 N.W.2d at 698. Ordinarily then, and subject only to limited exception, in order that a debtor who has removed from his or her homestead property may retain the right to claim a homestead exemption therein, "[a] notice must be filed within [six] months." Eustice, 413 N.W.2d at 118.

It is undisputed that Marlyce failed to file notice as required by Section 510.07. Marlyce moved from the Northfield residence to Kenyon, Minnesota, on February 27, 1994, almost two and one-half years prior to her filing in bankruptcy. Under Section 510.07, as of August 27, 1994, Marlyce is deemed to have abandoned her homestead in the Northfield property, and in any exemption she might previously have claimed therefrom.[10] Furthermore, because Marlyce's right to a homestead exemption in the Northfield residence was abandoned by her failure to comply with Section 510.07 prior to the sale of her ownership interest therein, which she claims is represented by the entry of the dissolution decree, she

---

the same as the owner's homestead. . . .

Minn. Stat. § 510.07.

[10]Even, for argument's sake, were we to premise our abandonment calculation upon a later date, taking as our point of departure, for example, Marlyce's claim that her last stay in the Northfield residence occurred in June 1995, she still would be deemed to have abandoned her interest in the homestead after December 1995. This date, too, occurs before the entry of the dissolution decree; thus, before the event from which she claims her lien as "proceeds" under Section 510.07 for purposes of a one-year exemption, and well before her filing in bankruptcy.

11

would have no claim of exemption in any proceeds received thereafter, including, for the sake of pure argument, her lien against the home itself.

However, Marlyce contends that she is immune from the notice requirement of Section 510.07 by way of "legal disability." An exception to the strict application of the notice requirement under Section 510.07 may operate, "when the owner of the homestead is under a legal disability." Eustice, 413 N.W.2d at 118. However, the Minnesota Supreme Court has granted such exceptions only under very limited circumstances. Compare Millet v. Pearson, 143 Minn. 187, 189-90, 173 N.W. 411, 412 (1919) (person in jail was under legal disability); and Beigler v. Chamberlain, 145 Minn. 104, 107-08, 176 N.W. 49, 50 (1920) (person involuntarily committed to mental institution was under legal disability); and Eustice, 413 N.W.2d at 118 (person involuntarily confined to nursing home pursuant to commitment order requiring residence therein until death, after having killed another human being and having been found to be a danger to himself and to the public, was under a legal disability); with Muscala, 310 N.W.2d at 698 (person confined to nursing home for failing health was not under a legal disability); and Joy v. Cooperative Oil Ass'n, 360 N.W.2d 363, 366 (Minn. Ct. App. 1984) (en banc), review denied (Minn. March 6, 1985) (owner's absence of more than six months prompted by property's destruction by fire did not prevent loss of homestead where he failed to file requisite notice).

Thus, in view of the very limited exceptions which the Minnesota Supreme Court has permitted in regard to the notice requirement of Section 510.07, it appears that the bankruptcy court was correct in overruling In re Joy, 5 B.R. 681(Bankr. D. Minn. 1980), insofar as it purported to create an exception to the statute's requirements beyond the scope and applicability of those allowed by the supreme court. Indeed, other than In re Joy, there appears to be no authority for the proposition that a separated spouse can maintain a homestead in the marital home which she has vacated. Joy created an exception neither

supported by the statute nor by Minnesota case law. The Minnesota courts have found exception to the physical occupancy requirement in cases involving imprisonment or mental incapacity, but have refused to find exception even where the person is "compelled" to live elsewhere. The distinction is that a mentally incapacitated or incarcerated person may be unable to take the statutory steps necessary to preserve his or her homestead rights. Like the claimant in Joy v. Cooperative Oil Association, Marlyce had no excuse for failing to file the requisite notice.

Marlyce claims exception to the notice requirement of Section 510.07 by arguing that the entry of the April 5, 1995 temporary order legally prevented her from occupying the Northfield residence, and, thus, created in her a legal disability which relieved her from the strictures of the notice requirement. It is significant to note, however, that Marlyce voluntarily vacated the Northfield residence on February 27, 1994, almost two and one-half years prior to her filing in bankruptcy, and more than one year prior to the entry of the temporary order. As such, and in light of the very limited exceptions which the Minnesota Supreme Court has allowed to the notice requirement, Marlyce's claim of exception must be denied.

Additionally, Marlyce's periodic visits to the Northfield residence after February 1994, did not constitute occupancy within the meaning of Minnesota's homestead exemption statutes. Visitation does not create occupancy within the meaning of these statutory provisions, for, as was previously discussed, Minnesota courts require that a debtor's homestead be his or her actual place of abode. After voluntarily vacated the Northfield residence, Marlyce resided in three other cities. Under these circumstances, it is apparent that the Northfield residence was not Marlyce's dwelling after February 1994; it was not the residence she "occupied" anytime thereafter.

13

Lastly, we address an issue raised at oral argument which concerns the interplay between Minnesota Statute §§ 510.07 and 510.04.  Minnesota Statute § 510.04 provides, in pertinent part, that "the homestead title may be vested in either spouse, and the exemption shall extend to the debts of either or of both."  Minn. Stat. § 510.04.  Thus, a homestead remains impervious to the just demands of one or both spouses' creditors  for so long as one spouse retains the homestead exemption.  Eustice, 413 N.W.2d 114, 120 (Minn. 1987).  However, it does not follow from this that the exemption is preserved in both spouses for the duration of their marriage if only one spouse occupies the homestead.  These factors do not operate to interrupt the abandonment period provided for under Section 510.07 as to a non-occupying spouse.  Indeed, Marlyce's argument has been expressly rejected by the Court of Appeals for the Eighth Circuit, in Berens v. Hall, Byers, Hanson, Steil & Weinberger, P.A. (In re Berens), No. 92-2556, 991 F.2d 801 (Table), 1993 WL 128008, at *1 (8th Cir. Apr. 26, 1993) (per curiam),[11] on  nearly identical facts.

In In re Berens the debtor and his wife owned their marital abode as tenants-in-common.  The debtor left the marital home several months prior to his wife's filing for divorce, and more than one year before a dissolution decree was entered.   The debtor filed for bankruptcy several months after the entry of the dissolution decree.

The issue in Berens was, "whether, after a dissolution decree is entered, a non-occupant former spouse who files bankruptcy is entitled to the homestead exemption for his property interest in the former marital homestead."  In answering in the negative, the court held that (1) because the debtor had failed to occupy the marital home since November 1988,

---

[11]We are mindful of Rule 28A(k) of the Eighth Circuit Rules of Appellate Procedure, which discourages the citation of unpublished opinions from the Eighth Circuit. However, noting the dearth of case law addressing this statute, we find that this opinion should be noted.

the home could no longer qualify as his homestead pursuant to Section 510.01; (2) even were the debtor able to establish a homestead exemption pursuant to Section 510.01, he would lose the exemption through abandonment for he had not lived in the home for more than two years and had failed to filed the notice required under Section 510.07; and lastly, (3) Section 510.04 did not operate to preserve the homestead exemption in the debtor by way of his wife, because the debtor had abandoned his homestead well before the entry of the dissolution decree.

The case of In re Johnson, 207 B.R. 878, 881 (Bankr. D. Minn. 1997) is not in conflict with this result. In re Johnson is factually distinguishable from this case and from In re Berens. In Johnson, the debtor was married at the time he filed his petition in bankruptcy, and although both he and his wife were the record title holders as joint tenants of their residential real estate, he had lived outside the marital home in an apartment located only one block from his former residence for more than five years. The debtor never filed a notice of intent to preserve his claim of a homestead exemption in the marital abode as required by Section 510.07. Thus, Johnson limits its abandonment inquiry to that of a debtor who is married and who continues to possess an ownership interest in subject property, but has transferred residence to another property; an inquiry quite apart from our own. Nevertheless, Johnson still supports the proposition that a non-occupying debtor-spouse may legally be deemed to abandon a homestead exemption after ceasing to occupy the property for more than six months without filing the notice required by Section 510.07. Id.

Section 510.04 does not preserve a claim of a homestead exemption in a non-occupying spouse who has abandoned a homestead, but does preserve the exempt character of the homestead interest possessed by an occupying spouse from the demands of creditors of either spouse. Under these facts, Section 510.04 does not obviate the mandates of Section 510.07. Because Marlyce abandoned her homestead in the Northfield residence well before

15

the entry of either the temporary order or the dissolution decree, Marlyce's claim of a homestead exemption cannot be premised upon Section 510.04.  See In re Berens, 1993 WL 128008, at *1.

## IV.  CONCLUSION

We concur with the bankruptcy court's conclusion that the debtor has no allowable claim of exemption under Minnesota statute to her right to payment of the lien she holds against the Northfield residence.  For and upon the reasons above stated, the order of the bankruptcy court sustaining the trustee's objection to, and disallowing, Marlyce E. Mueller's claimed homestead exemption in her $45,000.00 lien against her former homestead and marital abode, is affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT

16