In re the ESTATE OF William Henry
ECKLEY, IV, a/k/a William H.
Eckley, Deceased.

No. A09–937.

Court of Appeals of Minnesota.

April 6, 2010.

Gayle Gaumer, Wilson Law Firm, Edina, MN, for appellant.

Steven Theesfeld, R. Thomas Greene, Jr., Yost & Baill, Minneapolis, MN, for respondent.

Considered and decided by CONNOLLY, Presiding Judge; HUDSON, Judge; and JOHNSON, Judge.

## OPINION

CONNOLLY, Judge.

Appellant challenges the district court's determination that decedent's house was not a homestead property that passed to her by statute. She also challenges the district court's alleged failure to award her additional money as a family allowance and an elective share of personal property due to a surviving spouse. Because the district court erred in its determination that decedent's mental incapacity was not a legal disability, and because its findings are insufficient to permit effective appellate review of appellant's family-allowance and elective-share issues, we reverse and remand.

## FACTS

Decedent William Henry Eckley, IV met appellant Erlinda Samaniego Eckley in the Philippines in 1997. They were married on November 16, 1999, when he was 53 and she was 50 years old. Although appellant and decedent married in the Philippines in 1999, she experienced immigration difficulties and was unable to come to the United States until after his death. During this time, decedent made annual winter visits to the Philippines but maintained his primary residence in Northome, Minnesota. Decedent's last trip to the Philippines was in the winter of 2000–2001. While there, he had a stroke in January 2001. Decedent returned to the United States in March—but not to his house in Northome; he subsequently had a second stroke and experienced serious complications from artery surgery. He never returned to his home in Northome, and he died on June 27, 2004.

Decedent's estate has a long and litigious history. The district court appointed Claire Eckley, decedent's sister, as the general conservator of decedent's estate in September 2001. The court found that, due to multiple strokes and other serious medical complications, decedent was unable to communicate or make decisions, and was thus unable to protect his estate.

In July 2004, appellant petitioned for formal probate of decedent's will and for the appointment of a special administrator. The district court issued an order appointing respondent Alternate Decision Makers, Inc., as special administrator of decedent's estate. The court found that appellant needed financial and other assistance to obtain a visa and to travel to Minnesota to be present for and participate in decedent's funeral and burial.

Claire Eckley was discharged as conservator by the district court in September 2005. Claire Eckley and appellant disputed the validity of appellant's marriage to decedent. This was a major issue because decedent's will and codicil predated his marriage to appellant, and the parties recognized that appellant was only entitled to an intestate share of decedent's estate if the marriage was valid. The court issued an order on June 23, 2006, declaring the marriage valid and formally probating decedent's will and codicil. This rendered appellant decedent's sole heir at law.

Numerous petitions and objections were presented to the district court. Relevant to this appeal, respondent petitioned the district court for an order authorizing it to sell the Northome real estate. Appellant petitioned and counter-petitioned the district court for an order denying respondent's petition to sell the real estate, instructing respondent to pay appellant additional money in family allowance and statutory elective personal property, and declaring the homestead status of the Northome property. The district court issued an order declaring that decedent's house was neither his nor appellant's homestead and allowing a modified version of respondent's final account.[1] This appeal follows.

## ISSUES

I. Did the district court err in determining that the real property was not decedent's homestead at the time of his death?

II. Did the district court err in determining that the real property was not independently appellant's homestead,

---

1. The order was submitted and recommended by a district court referee and became effective when countersigned by the district court judge. *See* Minn.Stat. § 484.70, subd. 7(e) (2008).

whether or not it remained decedent's homestead at the time of his death?

III. Did the district court err in declining to award appellant the maximum amount of family allowance and elective share authorized by statute?

## ANALYSIS

■■■■ This case involves the interpretation of statutes and application of caselaw, which are questions of law subject to de novo review. *Great W. Cas. Co. v. Barnick,* 542 N.W.2d 400, 401 (Minn.App. 1996). When, as here, the material facts are not in dispute, we do not defer to the district court's application of the law. *In re Collier,* 726 N.W.2d 799, 803 (Minn. 2007). A district court's findings of fact shall be set aside only if they are clearly erroneous. Minn. R. Civ. P. 52.01. On appeal, harmless error is to be ignored. Minn. R. Civ. P. 61.

### I.

Minn.Stat. § 524.2–402 (2008) deals with how a homestead is treated for purposes of estate administration. A homestead that "passes by descent or will" to a decedent's surviving spouse "is exempt from all debts which were not valid charges on it at the time of decedent's death," with exceptions not relevant here.[2] Minn.Stat. § 524.2–404(c). In cases not involving the decedent's descendants, the homestead descends to a surviving spouse "free from any testamentary or other disposition of it to which the spouse has not consented in writing." *Id.* (a)(1). Subject to exceptions for mortgages and liens on the property not relevant to this case, a homestead is exempt from a creditor's claims. Minn. Stat. §§ 510.01, .05 (2008).

■■■■ Debtor-creditor law defines a homestead as "[t]he house owned and occupied by a debtor as the debtor's dwelling place, together with the land upon which it is situated." Minn.Stat. § 510.01. This definition is also applicable in probate law; courts read debtor-creditor statutes pertaining to homesteads to fill in the relevant gaps in the probate statutes. *In re Estate of Bonde,* 694 N.W.2d 74, 76 (Minn.App. 2005); *In re Estate of Riggle,* 654 N.W.2d 710, 714 (Minn.App.2002). Property ceases to be the owner's homestead when the owner abandons his home. Minn.Stat. § 510.07. A homestead is deemed abandoned if the owner does not occupy it for more than six consecutive months and the owner does not file notice with the county recorder claiming it as his homestead. *Id.* Even if the homestead owner files the required notice, the exemption may not continue more than five years after the filing "unless during some part of the term the premises shall have been occupied as the actual dwelling place of the debtor or the debtor's family." *Id.*

■■■ Despite the statutory notice requirement, longstanding caselaw establishes that an owner is not required to file such notice if he is under a legal disability that precludes him from filing it. *Millett v. Pearson,* 143 Minn. 187, 189, 173 N.W. 411, 412 (1919). Thus, in *Millett,* the supreme court held that an incarcerated person does not abandon his homestead. *Id.* The court explained that "persons under legal disability or restraint or persons in want of freedom are incapable of losing or gaining a residence by acts performed by . . . others" because such persons are not "capable of acting for themselves." *Id.* Similarly, in *Beigler v. Chamberlin,* the supreme court held that a person does not

---

**2.** A homestead may be subject to claims for state hospital care or medical-assistance benefits. Minn.Stat. § 524.2–402(c).

lose his homestead rights if his non-occupancy is caused by his involuntary commitment to an insane asylum. 145 Minn. 104, 107–08, 176 N.W. 49, 50 (1920).

In contrast, the supreme court later held in *Muscala v. Wirtjes* that a homeowner's confinement to a nursing home did not exempt him from section 510.07's requirement that he file notice if not actually occupying the property, despite the man's expressed intent and desire to return home. 310 N.W.2d 696, 698 (Minn.1981). Applying *Muscala* to hold that a female owner who was confined to a nursing home and failed to file the required notice was deemed to have abandoned her homestead, this court explained that "a need for physical care outside of the home is not tantamount to involuntary commitment" or incarceration. *In re Estate of Hoffman*, 354 N.W.2d 581, 583 (Minn.App.1984), *review denied* (Minn. Jan. 2, 1985).

Subsequently, the supreme court reaffirmed the continued vitality of *Millett* and *Beigler*, holding that a person who was found to be a danger to himself and the public and was involuntarily committed to a state hospital did not abandon his homestead through his absence of more than six months. *Eustice v. Jewison*, 413 N.W.2d 114, 116, 119 (Minn.1987). *Eustice* makes clear that legal disability remains the determinative inquiry:

> The court in *Muscala* expressly did not overrule the prior cases which granted an exemption for legal disability, but, instead, concluded that confinement to a nursing home due to failing health did not constitute legal disability. In the present case, on the other hand, Jewison was under a legal disability for the entire period he was absent from his home. Although Jewison was placed in a nursing home, as was the decedent in *Muscala*, Jewison remained under a commitment order and was legally required to reside there until his death.

*Id.* at 119 (citation omitted).

One federal court has explained:

> The Minnesota courts have found exception to the physical occupancy requirement in cases involving imprisonment or mental incapacity, but have refused to find exception even where the person is "compelled" to live elsewhere. The distinction is that a mentally incapacitated or incarcerated person may be unable to take the statutory steps necessary to preserve his or her homestead rights.

*In re Estate of Mueller*, 215 B.R. 1018, 1025 (8th Cir.BAP 1998). A federal court's interpretation of state law is not binding on this court. *State by Hatch v. Employers Ins. of Wausau*, 644 N.W.2d 820, 828 (Minn.App.2002). However, it may be persuasive, and this interpretation of Minnesota caselaw is consistent with the supreme court's rationale. A person who needs to live in a care facility rather than in his own house due to physical infirmity is still capable of filing the required legal notice, whereas a person who lacks mental capacity is unable to take the necessary legal steps to preserve his homestead rights.

Respondent contends that our decision in *Hoffman* is controlling in this case. In *Hoffman*, we held that the decedent abandoned her homestead, notwithstanding her "need for physical care outside of the home" that resulted in her residence in a nursing home. 354 N.W.2d at 583. Respondent asserts that Hoffman "had been under conservatorship for some years prior to death, which necessarily means a court had found the decedent to be incapacitated." In fact, Hoffman began living in a nursing home in 1973, but her daughter was not appointed as conservator until 1977. *Id.* at 582. Again, absent legal disability, notice must be filed within *six*

*months.* Minn.Stat. § 510.07. There is no indication in *Hoffman* that the decedent was mentally incapacitated prior to appointment of her conservator, which occurred nearly *four years* after she ceased to reside in her home. Thus, *Hoffman* is a case about physical health problems; it does not apply to a case about mental incapacity.

■ Appellant contends that decedent was mentally disabled within the meaning of Minn.Stat. § 541.15 (2008), which deals with statutes of limitations. Specifically, she contends that decedent was legally insane. We disagree. The statute provides that a "plaintiff's insanity," if "existing at the time when a cause of action accrued or arising anytime during the period of limitation, shall suspend the running of the period of limitation until the same is removed," but except for infancy, the limitations period shall not be extended for more than five years, and not for more than one year after the disability ceases. Minn.Stat. § 541.15(a)(2). By its plain language, section 541.15 tolls the limitations period for bringing suit when a cause of action has accrued, and is therefore inapplicable to the legal duty that section 510.07 imposes on a physically absent owner to file notice claiming his property as his homestead. *See Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn.2004) (when unambiguous, the plain language of a statute is controlling).

■ Despite appellant's misplaced reliance on the tolling statute, we find merit in her argument that decedent suffered from a legal disability within the meaning of *Millett, Beigler,* and *Eustice.* In its order appointing decedent's sister as conservator of the estate, the district court found that, as a result of multiple strokes, decedent was "confused and unable to make or communicate decisions," could not speak, and was only occasionally able to respond by nodding his head. The court found that decedent lacked sufficient understanding or capacity needed to make or communicate responsible decisions concerning his estate. In its order allowing respondent's final account and determining the status of decedent's home, the district court found that decedent never regained his mental capacity.

This case involves a district court's unchallenged findings concerning the decedent's mental incapacity and a district court order appointing a conservator to oversee the decedent's affairs and estate management. In this case, decedent was incapable of taking the legal steps necessary to protect his estate, such as filing notice of homestead status pursuant to Minn.Stat. § 510.07. We therefore hold that decedent's mental incapacity was a legal disability such that he was not required to file notice claiming his property as his homestead.

Because decedent died less than five years after ceasing to physically occupy the property, section 510.07 did not cut off the homestead exemption and it remained decedent's homestead at his death. It follows that, for probate purposes, the property was appellant's homestead at the time of decedent's death. "If the owner dies leaving a spouse or minor children constituting the owner's family surviving, the homestead exemption shall not be affected by the death." Minn.Stat. § 510.06 (2008). The district court's conclusion that the homestead was non-homestead property subject to claims against decedent's estate was therefore in error.

**II.**

Appellant contends that even if decedent abandoned the homestead because his mental incapacity was not a legal disability, it was independently her own homestead. Because we hold that mental

incacity is a legal disability within the meaning of Minnesota homestead-exemption cases, it is unnecessary to consider this argument, and we decline to do so.

### III.

■ Appellant contends that she is entitled to additional money for maintenance pursuant to Minn.Stat. § 524.2–404 (2008) and her elective share of personal property pursuant to Minn.Stat. § 524.2–403 (2008). For the reasons that follow, we conclude that the record is inadequate to resolve these contentions.

■ A surviving spouse "shall be allowed a reasonable family allowance in money out of the estate for [her] maintenance ... for one year if the estate is inadequate to discharge allowed claims." Minn.Stat. § 524.2–404(a)(1). "The amount of the family allowance may be determined by the personal representative in an amount *not to exceed* $1,500 per month." *Id.* (b) (emphasis added). "The family allowance is exempt from and has priority over all claims." *Id.* (d).

Appellant asserts that the family allowance in an insolvent estate is $1,500 per month for 12 months, and that if the estate possesses sufficient assets to pay the total $18,000 family allowance in full, it must do so. This is incorrect. Section 524.2–404 plainly allows the personal representative—or in this case, the special administrator[3]—discretion in determining that a reasonable amount of maintenance might be less than the maximum $1,500 per month. Here, the record reflects that appellant received $600 per month for nine months ($5,400 total), plus $3,375.93 toward immigration expenses, which she concedes is part of the family allowance.

■ Implicit in appellant's contention is the argument that reasonable maintenance payments must be made for the whole prescribed term of one year. There is textual support for this position, because the word "shall" is mandatory, and the statute provides that the family allowance shall be paid for one year. *See* Minn.Stat. §§ 524.2–404(a)(1) (stating that, for insolvent estates, a reasonable family allowance "shall be allowed" for the maintenance of a surviving spouse "for one year"), 645.44, subd. 16 (" 'Shall' is mandatory.") (2008). However, the statute does not expressly or by necessary implication require that payments be made once per month. We are not free to read into a statute language that the legislature omitted. *Northland Country Club v. Comm'r of Taxation,* 308 Minn. 265, 271, 241 N.W.2d 806, 809 (1976). Moreover, appellant has conceded that the money she received toward immigration expenses was part of the family allowance to which she was entitled. If the $600 per month that she received for nine months was adequate or reasonable, then the remaining $1,800 could be deemed subsumed within the additional $3,375.93 received by appellant.

A surviving spouse is also entitled to receive other exempt property from the estate in the form of an elective share of personal property. A surviving spouse is entitled to "one automobile" in addition to "property not exceeding $10,000 in value in excess of any security interests therein, in household furniture, furnishings, appliances, and personal effects." Minn.Stat. § 524.2–403(a). If the selected property is worth less than $10,000, the surviving spouse "is entitled to other personal property of the estate, if any, to the extent necessary to make up the $10,000 value."

**3.** "A special administrator appointed by order of the court in any formal proceeding has the power of a general personal representative except as limited in the appointment and duties as prescribed in the order." Minn. Stat. § 524.3–617 (2008).

*Id.* (c). "Rights to exempt property and assets needed to make up a deficiency of exempt property have priority over all claims against the estate, but the right to any assets to make up a deficiency of exempt property abates as necessary to permit earlier payment of the family allowance." *Id.* (d).

Appellant argues that she selected personal property worth $100, and that she is therefore entitled to $9,900 "in cash statutory selection." She notes that respondent sold the remainder of decedent's personal property for $850, which she did not receive. She asserts that the estate possessed sufficient assets to pay her the full $10,000, as well as the full claimed $18,000 in family allowance. Beyond citing to the relevant statutory provisions, appellant presents no reasoning and cites no authority in support of these claims.

The district court's order includes no findings of fact pertaining to how much money appellant received in family allowance pursuant to Minn.Stat. § 524.2–404 or how much value appellant received in her elective share of personal property pursuant to Minn.Stat. § 524.2–403. The district court failed to discuss appellant's arguments on these claims. Appellant properly raised these claims in the district court, requesting by petition $9,100 plus interest in additional family allowance and $9,900 plus interest in additional exempt property.

At a hearing before the referee, a representative for respondent did testify that appellant received seven payments of $600 in family allowance, plus one $1,200 payment, and that respondent also paid wire-

transfer fees and spent money on a hotel room for appellant as well as on immigration-related expenses in an attempt to secure appellant's passage to the United States, for a total of $11,350. The representative testified that the personal property in the estate[4] had an inventory carrying value of $4,700, but that the share not selected by appellant (which she sold for $100) actually sold for $850. The inventory value of all property was a figure taken from the conservator's inventory, which significantly overstated the property's actual value.

 The record suggests that the district court believed that expenses of administration are not claims against an estate. If the district court's decision was premised on this theory, then coupled with the estate's insolvency, that might explain why the court ruled on which fees respondent could collect but not on appellant's family-allowance and elective-share arguments, since sections 524.2–403 and 524.2–404 provide that a surviving spouse's allowance and selected personal property shares have priority over all "claims." However, the relevant statute makes clear that a "claim" includes "liabilities of the estate which arise after the death of the decedent including funeral expenses and expenses of administration." Minn.Stat. § 524.1–201(6) (2008).

 This court may not determine issues of fact on appeal. *Fontaine v. Steen,* 759 N.W.2d 672, 679 (Minn.App. 2009). "A reviewing court must generally consider only those issues that the record shows were presented *and considered* by the trial court in deciding the matter be-

---

4. This figure for the value of the estate's personal property does not include a truck owned by decedent, which had an inventory value of $5,000 but sold for $2,000, which appellant received. The truck should not have been included toward the $10,000 in personal property to which appellant was entitled. *See* Minn.Stat. § 524.2–403 (surviving spouse may receive personal property up to $10,000 *and* "one automobile, without regard to value").

fore it." *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (emphasis added). Because the district court failed to consider appellant's arguments and failed to make the findings needed to address these contentions, we remand. *Cf. Friend v. Gopher Co.,* 771 N.W.2d 33, 35 (Minn.App. 2009) ("Because the district court's findings are insufficient to permit reasoned appellate review, we reverse and remand for further findings.").

### DECISION

Because mental incapacity is a legal disability within the meaning of Minnesota homestead law, decedent did not abandon his homestead by not filing the notice normally required by Minn.Stat. § 510.07. As the surviving spouse, the exempt homestead passed by statute to appellant at the time of decedent's death. The district court's determination that decedent's homestead was not appellant's homestead was therefore in error. Because the district court failed to address appellant's claims pursuant to Minn.Stat. §§ 524.2–403 and 524.2–404 and failed to make findings sufficient to permit reasoned appellate review, we reverse and remand for further proceedings consistent with this opinion.

**Reversed and remanded.**