*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0525**

George Reilly,
Trustee of the Nathan L. Bentson 1993 Irrevocable Trust; et al.,
Appellants,

vs.

Michael J. Antonello,
Respondent,

and

Michael J. Antonello & Associates, Ltd.
Respondent,

and

Michael J. Antonello & Associates, Ltd. Employee Stock Ownership Plan,
Intervenor

**Filed December 1, 2014
Reversed and remanded
Ross, Judge**

Hennepin County District Court
File No. 27-CV-10-21437

Byron E. Starns, Douglas R. Boettge, Kathryn I. Landrum, Stinson Leonard Street LLP, Minneapolis, Minnesota ; and

Phillip Gainsley, Law offices of Phillip Gainsley, Minneapolis, Minnesota (for appellants)

Warren E. Peterson, Daniel J. Duffek, Peterson, Fram & Bergman, P.A., St. Paul, Minnesota (for respondent Michael J. Antonello)

T. Chris Stewart, Lindsay W. Cremona, Anastasi Jellum, P.A., Stillwater, Minnesota (for respondent Michael J. Antonello & Associates, Ltd.)

Thomas Brever, Foster & Brever, PLLC, St. Anthony, Minnesota (for intervenor Michael J. Antonello & Associates, Ltd. Employee Stock Ownership Plan)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Stoneburner, Judge.[*]

## UNPUBLISHED OPINION

**ROSS**, Judge

Michael Antonello's judgment creditors attempt to satisfy a 2011 $3 million judgment against him by attaching artwork that Antonello claims he gave to his wife seven years before the judgment. The creditors filed a motion in district court arguing that Antonello fraudulently transferred expensive artwork to his business to keep it from them and that the district court should reject as groundless Antonello's defense that he could not have transferred the artwork to his business because he had already given it to his wife (whom he says alone transferred the art to his business). The district court held that the creditors could challenge the alleged spousal gift only within the framework of the Minnesota Uniform Fraudulent Transfers Act (MUFTA). We hold that creditors may rely on a legal theory outside MUFTA to challenge a debtor's assertion that he no longer owned assets he allegedly fraudulently transferred. We reverse and remand.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

A 2011 district court judgment obligates Michael Antonello to pay appellants George Reilly and Thomas Braman, as trustees of two irrevocable trusts, and Marquette Trust $3,005,059.05. The creditors filed an amended motion to execute on the judgment in October 2012. Their motion asked the district court to find that a February 2010 promissory note and security agreement given by Antonello to his company, Michael J. Antonello & Associates, Ltd., were fraudulent under the Minnesota Uniform Fraudulent Transfers Act (MUFTA), that transfers that Antonello and his wife made to the company in December 2010 were also fraudulent under MUFTA, and that Antonello remained "the owner of the works of fine art and musical instruments in his possession or under his control." The appellant creditors also asked the court to order Antonello to surrender the artwork to satisfy the $3 million judgment. Antonello opposed the motion by asserting that he had given the artwork to his wife, Jean Antonello, in 2004, and that she alone later transferred it to the company in December of 2010.

The district court conducted an evidentiary hearing. Michael Antonello testified that in 2004 he gave his wife all the paintings he owned. He provided the district court a corroborating gift statement purportedly executed in 2004. And he asserted that he made the gift for estate planning purposes—specifically, to take advantage of the federal unified tax credit. Jean Antonello likewise testified that Michael had given her the artwork in 2004.

The district court received evidence that in February 2010 Michael Antonello issued a promissory note for $3.6 million to his company. It also received evidence that

3

in December 2010 Michael and Jean Antonello entered into an asset purchase agreement with the company, and under this agreement the company canceled the February 2010 promissory note in exchange for assets worth $3.7 million owned by the Antonellos. These assets were primarily the artwork that Michael had allegedly given to Jean in 2004. Michael Antonello signed the December 2010 agreement as the artwork's "seller." At the time of this 2010 exchange, Michael Antonello was president of the company, and he was also the sole trustee and beneficiary of the "Associates Employee Stock Ownership Plan," which was the only shareholder of the company. In other words, Michael Antonello was the sole beneficiary of the entity that was the sole owner of the company that bore his name, and he claimed that in 2004 he gave his wife about $3 million worth of artwork that he (along with his wife) later sold to his business in 2010 for $3 million, two months before the appellants secured the $3 million judgment against him. According to the creditors (and undisputed in the record), the artwork has always remained in Michael Antonello's possession and control despite his allegedly giving the artwork away in 2004 and selling it in 2010.

The district court received briefing on "whether [the creditors] have standing to challenge the validity of Antonello's 2004 gift to his wife," and then it denied the judgment creditors' motion. The court openly expressed its suspicion about the purpose for the 2004 gift, but it reasoned that the 2011 judgment creditors failed to demonstrate that the gift was a fraud on them under MUFTA because Michael Antonello had no creditors to defraud in 2004 when the alleged giving occurred. The district court focused only on whether the gift constituted a MUFTA fraud. It saw the creditors' argument that

4

Michael had never really given the art to his wife in 2004 as a MUFTA challenge to the gift, and it held that the creditors had no standing to challenge the gift "outside the context of the MUFTA framework." Deeming that challenge out of bounds and therefore deeming the artwork no longer Michael's by 2010, the district court believed that it had no basis to consider whether the 2010 transfer of artwork to the company was fraudulent (because the artwork's supposed sole owner, Jean, was not a debtor or a party in the case). The judgment creditors appeal.

## DECISION

The judgment creditors challenge the district court's refusal to address their argument that, because Michael Antonello's alleged 2004 gift to his wife never occurred, he continued to own and fraudulently transferred the artwork in 2010. They ask us to hold that the 2004 gift did not occur as a matter of law, and they argue that the 2010 artwork purchase agreement between the Antonellos and Michael's company constituted a fraudulent transfer under MUFTA. For the following reasons, we hold that the district court erred by concluding that it could not address whether Michael Antonello had divested himself of the artwork by supposedly giving it away in 2004.

### I

The appellant creditors have a general right to collect on their $3 million judgment by attaching Antonello's property. This is because a judgment creditor may enforce a judgment by executing on the debtor's assets. Minn. Stat. § 550.02 (2012). Although debtors might be tempted to avoid this result by giving away or selling their assets, Minnesota law "prohibits a debtor from transferring property with the intent to hinder,

5

delay, or defraud any creditors." *New Horizon Enters., Inc. v. Contemporary Closet Design, Inc.*, 570 N.W.2d 12, 14 (Minn. App. 1997). If the debtor attempts to transfer his assets to defraud his creditors, the Minnesota Uniform Fraudulent Transfers Act (MUFTA), Minn. Stat. §§ 513.41–.51, allows creditors to invalidate the transfer so they can execute on the assets. *See* Minn. Stat. § 513.47 (2012) (listing "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim" as a remedy for creditors in fraudulent transfer action). MUFTA "prevent[s] debtors from placing property that is otherwise available for the payment of their debts out of the reach of their creditors." *Citizens State Bank v. Brown*, 849 N.W.2d 55, 60 (Minn. 2014). Before creditors can convince a court that a debtor's transfer of assets was fraudulent under MUFTA, however, they must of course establish that the debtor actually owned the transferred assets. The question of ownership then precedes and is distinguished from the question of fraud under MUFTA.

The judgment creditors presented this question to the district court. They asked the district court to find that Michael Antonello still owned the artwork when he transferred it to his business in 2010 so that the court could decide whether the 2010 transfer was fraudulent under MUFTA. The creditors' request was appropriate; long before MUFTA it was well settled that "[i]f the property transferred is not subject to the claims of creditors, the rules as to fraudulent conveyances do not apply." *Kummet v. Thielen*, 210 Minn. 302, 306, 298 N.W. 245, 247 (1941). Whether Michael still owned the art in 2010 is a threshold issue distinct from whether the 2010 transfer was fraudulent. Responding to Michael's assertion that he had given the art away before his allegedly fraudulent

6

transfer, the creditors maintained that the gift was "a fiction that should be ignored" and they argued that Michael continued to own the artwork until he and his wife fraudulently transferred it to Michael's business.

In a thorough and otherwise well-reasoned order, the district court apparently treated the two distinct issues (whether Michael actually gifted the art in 2004, and whether the 2010 transfer was fraudulent) as part of the creditors' MUFTA claim. It reasoned that the creditors could not challenge the alleged 2004 gift as a fraudulent transfer under MUFTA because, at the time of the alleged 2004 gift, the 2011 judgment debt did not yet exist. The district court's logic is self-evident, but it overlooks that the creditors are not challenging the alleged 2004 gift as fraudulent under MUFTA. The creditors are instead challenging the 2010 transfer as fraudulent, and, only in reply to Michael Antonello's defense (specifically, that he could not have fraudulently transferred the artwork in 2010 because in 2004 he had given away and no longer owned the artwork), they maintain that, as a matter of fact, the alleged 2004 gift never occurred.

We recognize that the creditors' arguments may have included an implicit contention that the alleged 2004 gift constitutes a MUFTA violation, but this was certainly not their direct or primary argument. Unlike a creditor in a MUFTA claim, who might challenge an actual gift as constituting a fraudulent transfer, the creditors here argued to the district court and argue to us that there simply was no 2004 gift. They have not contended that the gift was a fraud; using their words, they have contended that the gift was "a fiction." This contention does not depend on MUFTA. Michael Antonello offers no persuasive support for the district court's holding that MUFTA is the only legal

7

basis on which the creditors may question Michael's factual defense to their MUFTA claim. For this reason we conclude that the district court wrongly accepted as unassailable Michael's assertion that a 2004 gift actually occurred. And we consequently conclude that it did not sufficiently explore the creditors' contention that Michael Antonello continued to own the art transferred to his business in 2010.

The judgment creditors urge us to go further than to hold that the district court erroneously failed to address the fact question of whether Michael Antonello continued to own the art transferred to his business in 2010. They ask us to determine also that Antonello's alleged gift to his wife in 2004 never occurred. The creditors point us to the supposedly undisputed and uncontradicted evidence they presented to the district court: that the artwork continues to remain in Michael Antonello's home; that he used his ownership of the art to obtain substantial personal financing long after 2004; and that he signed the 2010 purchase agreement as "seller" of the same artwork that he now claims to have gifted away six years before. Regardless of the weight we might ascribe to the creditors' assertion that this evidence points to only one factual conclusion, it is not within an appellate court's duties to decide issues of fact. *Kucera v. Kucera*, 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966). And we cannot decide the issue as a matter of law because a fact-finder is not required to believe even uncontradicted testimony. *Gellert v. Eginton*, 770 N.W.2d 190, 196 (Minn. App. 2009), *review denied* (Minn. Oct. 20, 2009). The district court is the proper forum to determine factually whether Antonello owned the artwork at the time of the 2010 transfer, which is a determination

8

that will, in turn, help inform the district court as to whether Antonello's creditors have successfully challenged the 2010 transfer as fraudulent under MUFTA.

We recognize that this fact question may include legal elements, such as those arising from the common law, *see Oehler v. Falstrom*, 273 Minn. 453, 456–57, 142 N.W.2d 581, 585 (1966) (defining the legal elements of a common-law gift as delivery, intention to make a gift, and absolute disposition of the gifted property), but even so, the district court should decide it first. *See, e.g.*, *In re Estate of Eckley*, 780 N.W.2d 407, 415 (Minn. App. 2010) ("Because the district court failed to consider appellant's arguments and failed to make the findings needed to address these contentions, we remand."); *Clark v. Clark*, 642 N.W.2d 459, 467 (Minn. App. 2002) (remanding case to district court to decide factual question); *see also Doe 175 ex rel Doe 175 v. Columbia Heights Sch. Dist., ISD No. 13*, 842 N.W.2d 38, 43 (Minn. App. 2014) (quoting *In re Judicial Ditch No. 1*, 140 Minn. 1, 3, 167 N.W. 124, 125 (1918)) (noting that legal issues must be considered and decided by the district court before appellate review). We remand for the district court to decide whether Michael actually owned the artwork at the time of the 2010 transfer.

## II

Michael Antonello and the business also argue that any challenge to the alleged 2004 gift from Michael to Jean is barred by the statute of limitations. The creditors insist that the argument is flawed and should not affect the assessment of whether Michael still owned the artwork in 2010 when it was transferred to the business. The district court

never addressed the issue, and for the reasons just discussed, we will not answer the argument for the first time on appeal.

### III

The creditors raise various other arguments challenging the district court's conclusion that they failed to establish that the 2010 transfer from Michael Antonello to the business was fraudulent under MUFTA. Because the district court's order denying the creditors' motion depends entirely on its mistaken holding that it could not address their argument that Michael Antonello never gave the artwork away before his alleged 2010 fraudulent transfer by sale to his business, we reverse only on that ground. We therefore decline to address any of the other bases the creditors raise to challenge the district court's holding that the 2010 transfer could not have been a fraudulent transfer.

We reverse, and we remand for the district court to make fact findings and legal conclusions determining whether Michael Antonello owned the artwork in 2010 and if appropriate to address the creditors' MUFTA challenge to the 2010 transfer.

**Reversed and remanded.**