*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0658**

In re the Marriage of:
Paul Timothy Patock, petitioner,
Respondent,

vs.

Cathy Liane Patock n/k/a Cathy Liane Mehr,
Appellant,

County of Kandiyohi, intervenor,
Respondent.

**Filed January 12, 2015
Affirmed
Klaphake, Judge***

Kandiyohi County District Court
File No. 34-FA-05-115

Theresa Patock, Jones & Patock PA, Willmar, Minnesota (for respondent Paul Timothy Patock)

Gregory Anderson, Anderson, Larson, Hanson, Saunders, P.L.L.P., Willmar, Minnesota (for appellant)

Shane Baker, Kandiyohi County Attorney, John Kallestad, Assistant County Attorney, Willmar, Minnesota (for respondent county)

        Considered and decided by Peterson, Presiding Judge; Larkin, Judge; and

Klaphake, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KLAPHAKE**, Judge

Appellant Cathy Mehr argues that the district court misapplied *Haefele v. Haefele*, 837 N.W.2d 703 (Minn. 2013) when addressing whether to modify respondent Paul Patock's sub-guideline child support obligation. Because the district court correctly applied *Haefele*, its findings of fact are supported by the record, and appellant has not otherwise shown that the district court abused its discretion in addressing child support, we affirm.

## DECISION

We review orders modifying child support—including whether to deviate from a presumptive guideline support obligation—to determine whether the district court abused its discretion by resolving the matter in a manner contrary to logic and the facts on record. *Haefele*, 837 N.W.2d at 708, 714. Whether a district court correctly applied caselaw is reviewed de novo. *In re Estate of Eckley*, 780 N.W.2d 407, 410 (Minn. App. 2010).

### A. *Haefele*

*Haefele* directs a district court addressing child support to calculate a presumptive support obligation based on the "gross incomes" of the parents, and then to assess whether, based on the factors listed in Minn. Stat. § 518A.43 (2012), it is appropriate to set an actual obligation that deviates from the presumptive obligation. 837 N.W.2d at 708. For purposes of this calculation, "gross income" includes income from self-employment and operation of a business. Minn. Stat. §§ 518A.28(a); .29 (2012).

Respondent is the owner and sole operator of Willmar Wood Products (WWP). Previously, the district court set respondent's child support obligation at an amount below the presumptive obligation. It did so largely because, when respondent acquired WWP in 2010, it was by a "strip sale," in which ownership of WWP was transferred to respondent, but all of its cash, as well as both its accrued accounts receivable and its earned accounts receivable, were retained by the former owner. Further, it is WWP's practice to retain, rather than distribute to respondent, much of WWP's earnings.

The district court calculated respondent's presumptive basic and medical support obligations using a "gross income" for respondent that included WWP's retained earnings. The district court also acknowledged that, under Minn. Stat. § 518A.39, subd. 2 (2012), these presumptive support obligations created a rebuttable presumption favoring an increase of respondent's existing obligations. Consistent with *Haefele*, however, the district court also noted that because the statutory definition of "gross income" includes undistributed earnings of a closely held business, a strict application of that definition had "a significant potential for unfairness." 837 N.W.2d at 714.

In considering the deviation factors, the district court emphasized the factors of the "circumstances[] and resources of each parent[,]" Minn. Stat. § 518A.43, subd. 1(1), and referred to *Haefele*'s observation that, in setting an actual support obligation, the "plain meaning" of the deviation statute "allows the district court to consider, among other things, the extent to which the parent's gross income is actually *available* to him or her to pay support." 837 N.W.2d at 714. Concluding that the "retention of income within WWP is a legitimate use of corporate funds" and a "sufficient" reason to rebut the

3

presumption that WWP's earnings for 2012 and 2013 should be attributed to respondent for support purposes, the district court ruled that a "deviation from the Guidelines is in the children's best interests[,]" and deviated from the presumptive obligations by calculating actual basic and medical support obligations for respondent using the amount respondent was actually being paid by WWP. The process used by the district court to set respondent's actual basic and medical support obligations at amounts deviating from the presumptive obligations is consistent both with the support statutes and with *Haefele*.

In her reply brief, appellant asserts, for the first time, that the district court failed to address the deviation factors of (a) the parties' earnings, income, circumstances, and resources; and (b) the standard of living the children would enjoy if the parties still lived together. *See* Minn. Stat. § 518A.43, subd. 1(1), (3). Issues first raised in a reply brief are waived. *Szarzynski v. Szarzynski*, 732 N.W.2d 285, 291 n.3 (Minn. App. 2007). Further, as noted, the district court's analysis emphasized the factors of the circumstances and resources of each parent: the district court's entire order focuses on the finances of the parties and WWP. Moreover, respondent testified that if the parties still lived together he would not take more money out of WWP. Therefore, we decline, on this record, to remand for explicit findings on the standard of living the children would enjoy if the parties still lived together. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (declining to remand and affirming when, "from reading the files, the record, and the court's findings, on remand the [district] court would undoubtedly make findings that comport with the statutory language" and reach the same result); *Tarlan v. Sorensen*, 702 N.W.2d 915, 920 n.1 (Minn. App. 2005) (citing *Grein*).

4

**B.    Appellant's arguments**

**1. Control of WWP:** Several of appellant's arguments assert that because respondent controls WWP and can decide how to use its funds and whether to disburse funds, calculation of respondent's "gross income" for his actual support obligations should include WWP's retained earnings. *Haefele*, however, notes that the statutes defining "gross income" and addressing income from self-employment do not support the idea that "gross income" of a parent with an interest in a closely held business depends on "the extent of shareholder control over the company." 837 N.W.2d at 710. Indeed, the district court calculated presumptive support obligations for respondent based on a "gross income" that included WWP's retained earnings, but rejected those presumptive obligations in favor of ones that deviated from those obligations. Further, respondent's financial expert, whom the district court found credible, counseled respondent to use funds received by WWP to pay its line of credit and to build WWP's cash reserves to the point that WWP will not need to rely on a line of credit in the future, and not to disburse to respondent funds beyond those necessary for him to pay the taxes on WWP's retained earnings attributable to him for tax purposes. Appellate courts defer to district court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

**2. Minority owner:** We reject appellant's suggestion that the district court misapplied *Haefele* because respondent is the sole owner of WWP and *Haefele* addresses only cases involving minority owners of closely held businesses. *Haefele* states that its analysis applies to situations "including" and hence not limited to "cases in which the parent is a minority owner of the business." 837 N.W.2d at 714.

5

**3. Taxes:** Appellant asserts that the district court erred by excluding from respondent's "gross income" the funds WWP distributed to him to pay taxes on WWP's retained earnings. *See Haefele*, 837 N.W.2d at 713 (addressing whether to exclude from "gross income" amounts disbursed by a business to an obligor to allow the obligor to pay taxes). But, as noted, the district court's deviation analysis refers to *Haefele*'s observation that the "plain meaning" of the deviation statute allows the district court to consider the extent to which a parent's "gross income" "is actually *available* to him" to pay support. 837 N.W.2d at 714. On this record, we conclude that even if the district court had calculated a higher presumptive support obligation for respondent based on a "gross income" for him including the amounts disbursed to respondent to pay taxes on WWP's retained earnings, the district court's deviation analysis still would support setting respondent's actual support obligation at the amount selected by the district court. Therefore, we decline to alter that obligation.

**4. Sheltering income:** We reject appellant's argument that respondent is using WWP to "shelter" income from being considered for support purposes. The district court was aware of both respondent's "gross income," and the presumptive support obligation based thereon. The district court also found, however, that (a) because of the 2010 "strip sale" of WWP to respondent, WWP had limited financial resources; (b) appellant's financial expert stated that WWP "is very well operated by [respondent] and that it is very sound financially"; (c) the parties' financial experts disagreed regarding "whether all earnings should be retained by WWP and that its Line of Credit always be paid when money is available to do so", and the court was "unable" to find one expert "more

6

credible than the other"; (d) "there is no allegation that [respondent] is self-limiting his income in order to avoid payment of child support," and "the Court has been presented with no evidence of extraordinary needs of the children"; and (e) a "deviation from the Guidelines is in the children's best interests," and respondent's plan to grow WWP means that "the children will ultimately benefit from such growth."

Appellant challenges none of these findings. Thus, any "sheltering" of income is not the result of conduct by respondent, but of a decision by the district court that, on this record, the deviation from the presumptive support obligation previously granted when respondent acquired WWP as an operating business but without cash and accounts receivable continues to be warranted. Finally, it is unclear how the district court can be seen to have abused its discretion by continuing a support obligation that deviates from guideline obligation when the district court found that the request to continue the deviation was not based on an attempt by respondent to finesse his support obligation, was consistent with expert financial advice which the district court found credible, and will ultimately benefit the children.

**Affirmed.**